E. B. ESTES & SONS v. GEORGE FROST CO.

(Circuit Court of Appeals, First Circuit.   February 8, 1910.)

No. 836.

TRADE-MARKS AND TRADE-NAMES (§ 70*)—UNFAIR COMPETITION—FRAUDULENT
    IMITATION OF PATENTED ARTICLE.

    Complainant, as exclusive licensee, made hose supporters having a rub-
ber button, which was protected by a patent covering the use of rubber
as the material, and advertised and sold the same under the trade-name
of "Velvet Grip." Defendant made wooden buttons for similar use, col-
ored to imitate rubber and used by other manufacturers on hose support-
ers which were sold to the public as rubber button supporters, and some-
times as "Velvet Grip" supporters. *Held*, that such sales constituted un-
fair competition.

    [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent.
Dig. § 81; Dec. Dig. § 70.*

    Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165;
Lare v. Harper & Bros., 30 C. C. A. 376.]

    Appeal from the Circuit Court of the United States for the District
of Massachusetts.

    Suit in equity by the George Frost Company against E. B. Estes &
Sons. From a decree granting a preliminary injunction, defendant
appeals. Affirmed.

    See, also, 156 Fed. 677.

    George C. Wing (George C. Wing, Jr., on the brief), for appellant.
Alexander D. Salinger, for appellee.

    Before COLT and PUTNAM, Circuit Judges, and ALDRICH, Dis-
trict Judge.

    ALDRICH, District Judge.   In this case of alleged unfair competi-
tion it seems quite plain that the decree of the Circuit Court should
be affirmed. The competition complained of has reference to the
wooden buttons of the defendants which are finished in imitation of
rubber. Manifestly, the purpose of finishing the buttons in rubber was
to deceive an unsuspecting public into thinking they were buying the
garter or hose supporter with the rubber button attachment. The
precise ground upon which the Circuit Court based the decision was
that the button was intended to simulate the plaintiff's patented ar-
ticle, and by reason of the simulation to replace it in the art; and we
think that court properly characterized such an intention, carried
into effect through manufacturing and placing the goods upon the
market, as unfair competition and as a wrongful act, whether done
before or after the expiration of the patent.

    In respect to the question of deceit this case is within the principle
of Church v. Proctor, 66 Fed. 240, 13 C. C. A. 426, and G. & C.
Merriam Company v. Ogilvie, 159 Fed. 638, 88 C. C. A. 596, 16 L.
R. A. (N. S.) 549, again, 170 Fed. 167, 95 C. C. A. 423, decided in this
circuit, which fully recognize the idea that members of the public are

entitled to know what they are buying, and that a purpose to create imitations or similitudes calculated in themselves to deceive, or making false characterizations calculated to deceive, amount to an imposition, and that when a deceptive article is purposely brought into competition with the genuine it amounts to unfair competition.

The whole trend of modern decision is in the direction of making it clear, whether in respect to food, drink, or wearing apparel, that placing adulterations and imitations upon the markets, with the purpose of deceiving members of the public who buy, as they do oftentimes upon casual inspection, into buying something for what it is not, is a business which is not countenanced by the law, and when with such deceptive purpose things are brought into situations of competition with the genuine that the competition is unfair. Such rules of law are in a large sense based upon the idea that the public in its relation to business and business in its relation to the public, in respect to the necessary and useful articles of life and trade, ought to have such protection as results from fair competition. And it follows that if one business concern has created, advertised, and sold a particular thing which proves to have intrinsic natural or inventive merit, which commends itself to the public under actual continuous use, that if another business concern conceives the idea of making something not possessing this merit at all, but making it so nearly in resemblance as to deceive members of the purchasing public into buying it, it not only becomes an imposition upon the public, but an imposition upon the rightful business of the one whose goods are imitated, and the imposition results from what, in law phrase, is called unfair competition.

The particular article in question is used largely in connection with hose supporters and garters, and the particular thing of novelty was the rubber button, properly mounted, performing an intended function in connection with the other parts of the supporter. This button was mounted upon a plate, and the stocking, or whatever material was to be held, was drawn over the head of the button, and when the restricted part of the wire clasp, under slight strain, was drawn over the fabric and upon the neck of the button, the button being rubber, would yield, and, under its inherent resilient quality, would create a lock upon the material which was intended to be held. The invention relates solely to the rubber material and its introduction in the shape of a button into old structures. The cases relating to this patent are based upon that ground, and invention is sufficiently established by adjudicated cases. The patented button in its setting proved to be exceedingly useful and attractive to the trade, for the reason that it stayed in place and did not cut fabrics, as did the old metal and other button holders of hard substances.

It was the rubber feature that made it salable. The defendants, apparently discovering this, and having made buttons and other turnings of wood for many years, conceived the idea of making a wooden button and painting it, or enameling it, or coloring it in imitation of rubber, and putting it in the hands of manufacturers, to the end that it should get into trade in imitation of the genuine. Indeed, in a letter to the trade they say:

"We have succeeded in producing an excellent imitation of the rubber button, and so good in fact that it takes quite a close inspection to detect the difference."

The fact that an inferior thing on the trade counters requires close inspection to detect it from the genuine goes a long way towards establishing its unfair influence in the market. If an unwary person, who was seeking to buy a hose supporter with a rubber button which would hold and not cut stockings or other fabric, was deceived, without close inspection, into buying one of wood made in imitation of rubber, which would cut, and which would not hold the stocking in place, that person would have been wronged through unfair competition in trade. And that the general public may be wronged, as well as business concerns dealing in the genuine article, is one of the reasons for the law against unfair competition. In a word, a rubber button being desirable for a certain purpose, the unfair competition consists in making and putting upon the markets a wooden button, made in imitation, which is not desirable for that purpose, with the idea of deceiving the public into buying it for the genuine. The fact that a thing influences the public and trade deceptively puts the thing into the field of unfair competition. It is understood that the decree of the Circuit Court directed itself against making and selling, for use in hose supporters, wooden buttons made in imitation of rubber.

The decree of the Circuit Court is affirmed, with costs.