KEYSTONE TYPE FOUNDRY v. PORTLAND PUB. CO.

(Circuit Court, D. Maine. July 16, 1910, and August 11, 1910.)

No. 628.

1. TRADE-MARKS AND TRADE-NAMES (§ 67*)—UNLAWFUL COMPETITION.

The manufacturers of a peculiar style of type, unpatented, which is marketable only on account of its utility, cannot restrain another from producing type of the same character.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 67.*

Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

2. TRADE-MARKS AND TRADE-NAMES (§ 71*)—USE OF NAMES—INFRINGEMENT.

Where complainant produced a peculiar style of type, which it sold under the name of "Caslon Bold," devised by the complainant to indicate its own goods, another manufacturer may be restrained from making use of that name.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. § 71.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 99*)—RELIEF.

Where, on a bill in equity asking restraint of the unlawful use of a trade-mark, there was in neither the record nor the presentation of the case any suggestion of any damages which would justify the expense of

an accounting, a master will not be ordered. Ludington Co. v. Leonard, 127 Fed. 155, 157, 62 C. C. A. 269, and other like cases, applied.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 99.*]

Bill by the Keystone Type Foundry against the Portland Publishing Company. Decree for complainant.

E. W. Bradford and Wilford G. Chapman, for complainant.

N. & H. B. Cleaves, S. C. Perry, and Venable, Baetjer & Howard, for respondent.

PUTNAM, Circuit Judge. This is a bill in equity, resting entirely upon alleged common-law rights, and claiming jurisdiction in this court simply on account of the variance of citizenship between the complainant and respondent. The complainant is a well-known type founder, and the respondent is alleged to be, to a certain extent, engaged in the same business, either as a founder or as a seller of type. At this point we will say that, while for certain purposes there may be a difference between type as type and the faces of type, we use the word "type" to cover the entire thing to which this proceeding relates. The complainant devised a style of printing, using peculiar type therefor, of which the following is an example:

# ABCDEFGHIJKLMNOP QRSTUVWXYZÆŒ
## abcdefghijklmnopqrstuvwx yzæœctst.,:;-'!?&£$

For the purpose of doing printing according to the foregoing design, the complainant devised and manufactured type adapted thereto. The whole topic, including the invention of the style of printing shown, and of producing the type to accomplish the printing, involved a very considerable expense, and, undoubtedly, a large degree of ingenuity and care. The type as manufactured by the complainant was known in the market as "Caslon Bold." The respondent put on the market type corresponding to that made by the complainant, and for the same purpose for which the complainant made their type. In some instances, at least, the respondent in its correspondence, and perhaps otherwise, spoke of its type as "Caslon Bold." This may have been without any special intention in reference thereto; but such is the fact which we are bound to consider. The complainant further maintains that the type manufactured by the respondent is of inferior quality, which is immaterial as this case is presented.

There is no claim on the part of the complainant to be protected

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

with reference to the style of typography produced by the type. Whether it has a right to maintain a claim of that sort we do not consider. So far as that is concerned, the present case is purely negative. In the same line, the plaintiff does not seek to restrain printing by the respondent, although it is apparent that the printing which we exhibit could not be produced except by type as manufactured and devised by the plaintiff, or something substantially the same. Neither does it claim any trade-mark whatever, except so far as contained in the words "Caslon Bold"; neither does it prove any "dressing up" by the respondent for the purpose of passing off inferior type, or any type, as the type of the plaintiff. The fact is that, as the case stands, the style of typography shown having been devised, the matter of producing the type to accomplish it was a mechanical detail, which could in no way involve anything colorable, or anything indicating especially an attempt to imitate in any direction.

Under the circumstances, the case seems very simple. The type in question has no characteristics in particular, except that of utility; and, if the bill could be sustained, the plaintiff would obtain a perpetual patent for a useful article, running indefinitely, without any assistance from the Patent Office of the United States. On putting the proposition in this form, it is so clearly met by the law that it needs no discussion.

Among all the cases cited by the complainant the one which it apparently urges on us with the most confidence, and the one which at first sight comes the nearest to its propositions, is Estes v. Frost Company, decided by the Circuit Court of Appeals for this Circuit on February 8, 1910, reported in 176 Fed. 338. Estes v. Frost Company, however, belongs to an ordinary class of cases involving a purpose to deceive, and is broadly distinguished from the case at bar by the closing sentence, as follows:

"It is understood that the decree of the Circuit Court directed itself against making and selling, for use in hose supporters, wooden buttons made in imitation of rubber."

Hesseltine's Law of Trade-Marks and Unfair Trade (1906) 198, in so far as it distinguishes between the imitation of structural features and ornamental features, points out what is ordinarily the true rule. In whatever manner a case may be "dressed up," if a close analysis brings the alleged offense down to a mere reproducing of a useful manufacture which has not been patented, a bill of this character cannot be sustained. On the plain facts, however, in that the respondent has gone beyond this and used the words "Caslon Bold," it has so far violated the law, and the plaintiff is entitled to relief.

Let the complainant file a draft decree in accordance with the opinion passed down the 16th day of July, 1910, within 10 days, and the respondent file corrections thereof within the next ensuing 10 days, all in accordance with rule 21.

### August 11, 1910.

In accordance with the opinion passed down in this case on July 16, 1910, the court has received a draft decree, and also proposed corrections thereof by the respondent. The court finds nothing in

the latter which requires it to modify the decree as submitted by the complainant. The decree as submitted provides that the complainant shall recover "such damages as it may prove it has suffered because of the use by respondent of the name 'Caslon Bold' to designate its type products." This is not a proper method of directing an accounting, and for that reason the court might strike it out; but the court prefers not to leave it in such an unsatisfactory manner. It is true that the bill claimed damages, and that the complainant in its opening brief may have referred to the fact of the use by the respondent of the words "Caslon Bold" as pointed out in the closing paragraph of the opinion referred to. Nevertheless, quite the entire discussion of the case by the complainant related to alleged unlawful manufacturing and selling type of the peculiar style which the complainant described. In no manner was the court enlightened on any question of damages, and in no place was the claim of damages formally made; and far less was there any exposition of such claim which the court could understand. Moreover, in the conclusion of the complainant's brief in rebuttal, the relief that it asked was an injunction against manufacturing and selling type of the class referred to, and from using the form of type referred to; and no other expected remedy was suggested.

On an examination of the record out of which arose the opinion of July 16, 1910, the court found a letter from the respondent to one of its customers in which the term "Caslon Bold" was used; and what the court said in the closing paragraph of its opinion was based entirely on what it thus incidentally discovered.

Under the circumstances, nothing has been brought to the attention of the court to enable it to apprehend that there could any advantage come from the appointing of a master which would offset the delay and expense involved in an accounting. Therefore the court follows the practice approved in American Box Co. v. Crosman (C. C.) 57 Fed. 1021, 1029; Bradford v. Belknap Co. (C. C.) 105 Fed. 63, 66; Ludington Co. v. Leonard, 127 Fed. 155, 157, 62 C. C. A. 269; Merriam Co. v. Ogilvie, 170 Fed. 167, 169, 170, 95 C. C. A. 423, and Kessler v. Goldstrom (C. C. A.) 177 Fed. 392, 394; and in a general way in Saxlehner v. Siegel-Cooper Co., 179 U. S. 42, 43, 21 Sup. Ct. 16, 45 L. Ed. 77. Therefore there will be no decree for an account.