MATZGER et al. v. VINIKOW.

(Circuit Court of Appeals, Ninth Circuit. January 31, 1927. Rehearing Denied March 7, 1927.)

No. 4830.

1. Trade-marks and trade-names and unfair competition ⬅️70(4)—Where labels are so similar that ordinary purchasers would not note the differences, unfair competition is not avoided because name of manufacturer is different.

Where defendant's labels bore such general resemblance to those of complainant that the differences would not be noted by ordinary purchasers, it is not a defense to a suit for unfair competition that the name of the manufacturer thereon was different.

2. Trade-marks and trade-names and unfair competition ⬅️70(4)—Similarity of candy labels held to constitute unfair competition.

Similarity of defendant's labels on candy to those of complainant *held* such as to constitute unfair competition.

3. Trade-marks and trade-names and unfair competition ⬅️86—Complainant held not chargeable with laches, which barred suit for unfair competition.

Delay of less than three years in bringing suit for unfair competition *held* not laches, which barred right to relief, where it was caused in part, at least, by correspondence looking to a settlement, or a discontinuance of the acts complained of.

4. Trade-marks and trade-names and unfair competition ⬅️86—Laches, to bar relief against infringer, must amount to assent or acquiescence.

While reasonable diligence must be exercised in asserting rights against an infringer in case of intentional and continuing infringement, laches which will bar relief must be such as to amount to assent or acquiescence.

5. Trade-marks and trade-names and unfair competition ⬅️99—Evidence of damage held to warrant decree for accounting.

Evidence of damage to complainant's business by unfair competition of defendant *held* sufficient to warrant decree for accounting.

6. Trade-marks and trade-names and unfair competition ⬅️99—Accounting normally follows willful unfair competition.

Where injunction is granted against unfair competition willfully conducted by defendant, with knowledge of complainant's rights, an accounting normally follows.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California; Frank H. Kerrigan, Judge.

Suit by Joseph Vinikow, doing business as the Parisian Chocolate Company, against Manford Matzger and Nathan Matzger, individually and as partners as the Matzger

Chocolate Company. Decree for complainant, and defendants appeal. Affirmed.

Gavin McNab, Nat Schmulowitz, and Oliver B. Wyman, all of San Francisco, Cal., for appellants.

Dinkelspiel & Dinkelspiel, Henry G. W. Dinkelspiel, Martin J. Dinkelspiel, and John Walton Dinkelspiel, all of San Francisco, Cal., for appellee.

Before GILBERT and RUDKIN, Circuit Judges, and JAMES, District Judge.

GILBERT, Circuit Judge. The appellee, as plaintiff, obtained in the lower court a decree against the appellants, as defendants, for an injunction and an accounting. The plaintiff sought relief for infringement of three trade-marks, which he applied to articles of confectionery, "Rough Bar," "Whipped Cream Style," and "Union Leader." The court below denied the exclusive right of the plaintiff to use those names as trade-marks, but upon the ground of unfair competition enjoined the defendants from using said labels in the form and manner in which they had used them, and referred the case to a master for accounting.

The defendants contend that the differences between the plaintiff's labels and theirs were so considerable and so marked as to avoid the charge of unfair competition. As to two of the labels, "Rough Bar" and the "Union Leader," we find the similarity so obvious that little need be said further than to point out their features. The bars of candy sold by the defendants were substantially of the same size as those sold by the plaintiff. The defendants' wrappers carrying these two labels were similar to the plaintiff's, the printing thereon was in the same colors, and the lettering was of like size. In the case of the "Rough Bar," the labels of both the plaintiff and the defendants are inclosed in a similar square. In the plaintiff's at the left is a circular seal design. In the defendants' at the left is a circular seal of the same dimensions, inclosing a shield displaying, when closely scrutinized, a lion rampant. The label of the "Union Leader" of both parties is in a long rectangle, within which on the left are the same seals as in the "Rough Bar," and on the right each carries a device representing two clasped hands.

[1] Where labels present such a general similarity, it is no defense that the name of the manufacturer is different; the plaintiff's being "Parisian Chocolate Company," and the defendants' being "Matzger's," both in much smaller type than the name "Union Leader."

In the "Whipped Cream Style" labels the difference is greater. Both labels, however, are similar in size, and are carried in an oval frame of identical shape; the line of the defendants' frame being slightly wavy. Both have the words "Whipped Cream Style Bar" and are printed in the same colored ink. Each carries a similar scroll device or seal near the center.

[2] We are not convinced that the court below was in error in holding that, notwithstanding the differences in the two labels, the general appearance of the defendants' so resembled that of the plaintiff's that its use might tend to deceive the ordinary, average, and unwary purchaser. While in a case of unfair competition, such as this, it is generally unnecessary, in order to obtain an injunction, to show that the defendants had the actual intention to mislead the public, the facts here in evidence, in addition to the similarity of the labels, are strongly indicative of the existence of such an intention. One of the defendants had been engaged in partnership with the plaintiff in Seattle under the name of the "Parisian Chocolate Company" in manufacturing and selling goods under the plaintiff's labels, and the other had been in business in California as a jobber in selling the plaintiff's goods, and it is shown that, when the defendants first placed their own goods upon the market, they used the term "Parisian" as part of the printing on their labels, and, while they may have been justified in disregarding the plaintiff's claim to the exclusive use of the names used by him as trademarks, they clearly had no justification for using labels and wrappers in imitation of those which he used, and such use was properly the subject of injunctive relief.

[3] The defendants pleaded the defense of laches, in that the plaintiff knew three years before the commencement of the suit, which was October 8, 1923, that the defendants were using the trade labels here in controversy. They contend that the defense should have been sustained. The court below was of the opinion that, while there was considerable delay in bringing the action, "much of it was caused by the tactics of the defendants, which tended to raise false hopes in the plaintiff that the whole matter might be adjusted without annoyance, delay, and expense of a suit. In any event the plaintiff is not chargeable with laches."

The evidence of the defendants was that their first order for the printing of wrappers and labels was filled in the latter part of November, 1920. It is shown by the correspond-

ence that the plaintiff promptly protested against the use of the labels and trade-marks. Again, on August 6, 1921, the plaintiff, by his attorney, brought the matter to the attention of the defendants, and on October 24, 1921, the defendants replied that they had engaged attorneys to determine the question of their rights to the use of the label "Union Leader," and that their decision would be given shortly thereafter, stating that they had on January 1, 1921, discontinued the use of the word "Parisian" in connection with their labels. In their letter to the plaintiff of November 10, 1921, the defendants asserted their right to use the name "Union Leader," but suggested suit or arbitration. Their letter of August 23, 1922, would seem to indicate that the only remaining matter for adjustment was their claim of right to the use of "Union Leader"; but this was written in answer to the plaintiff's letter of August 15, 1922, in regard to all his trade-names, which the defendants were using, and in which the writer said: "It seems that you do not regard or respect our trade-marks. * * * Unless you can give us assurance that you will discontinue the use of such names and methods in the near future, we will be compelled to bring such action as is necessary to protect our rights."

One of the defendants testified that some time between November 10, 1921, and August, 1922, an agent of the plaintiff called upon them, inspected the labels, and compared them, and said he wanted to try to settle the matter, if he could, and that the defendants informed him in reply that they would be very happy to settle the matter, and had on every occasion attempted to get the matter settled; that later another agent of the plaintiff called upon them to complain that they were infringing. The plaintiff testified that he always tried to persuade the defendants to desist, and always endeavored to keep out of court. "Once in a while," he said, "they would write a letter that they would discontinue, and they never did it."

[4] Cases arising out of unfair competition are analogous to those which arise out of violations of trade-marks, and are subject to the same rules. Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537, 11 S. Ct. 396, 34 L. Ed. 997. In either case reasonable diligence must be exercised in asserting the plaintiff's rights against an infringer, if he would have an account for profits and damages. But the laches that will operate as a bar are measured in each case by equitable considerations, and, in a case of intentional and continuing invasion of the plaintiff's rights, the delay, in or-

der to constitute a defense, must be such as to amount to assent or acquiescence. Sawyer v. Kellogg (C. C.) 9 F. 601; Moline Plow Co. v. Omaha Iron Store Co. (C. C. A.) 235 F. 519; Garrett & Co. v. A. Schmidt, etc., Wine Co. (D. C.) 256 F. 943; Wallace & Co. v. Repetti, Inc. (C. C. A.) 266 F. 307. In N. K. Fairbank Co. v. Luckel, King & Cake Soap Co. (C. C. A.) 116 F. 332, a delay of three years, during which the plaintiff had acquiesced in the infringement, was held to bar by laches his right to recover gains and profits. And it may be conceded that even a shorter period of acquiescence would operate to bar the right. But, in view of all the circumstances attending the delay in the present case, we are not convinced that there was error in the ruling of the court below.

[5] It is contended that the decree for an accounting is erroneous, for failure of the plaintiff to prove that he had established markets for his product under the three labels here in question in the respective states of California, Washington, and Oregon, and it is argued that it was incumbent upon him to prove that those three brands were well known to the trade and to consumers in those states. Rouss, Inc., v. Winchester Co. (C. C. A.) 300 F. 706, is cited to the proposition that there can be no unfair competition, unless the plaintiff is in fact a rival in the particular territory for the trade which the defendant secures therein. The plaintiff testified that he had done business in California since 1912, in Washington since 1907, and in Oregon since 1908. It is true that, from want of records at hand at the time of testifying, he was unable to state the amounts of sales made by him under each label in either of those states; but he testified that the use by the defendants of the label "Rough Bar" had an effect on his business both in Washington and in Oregon, and that, when the defendants' bars appeared on the market with competitive jobbers, his jobbers thought that he was double-crossing them, or having a branch in California, selling the brands to other people, selling the same brands, by which he testified was meant the same bars, the same labels, and the same names, and he said, "Thereby we lost." A former jobber of the plaintiff's goods testified that he lost sales when he encountered the defendants' "Union Leader," "Rough Bar," and "Whipped Cream Style" already on the market, and that on account of the fierce opposition in California he resigned.

In Regis v. Jaynes & Co., 191 Mass. 245, 77 N. E. 774, it was said: "If it appears that

the amount of damage to the plaintiff or of profits realized by the defendant is only insignificant, or that no actual damage has been sustained, the court may confine its relief to an injunction against any future infringement." And it has been held that, where the profits are trivial or disproportionate to the expense of taking an account, a decree for that purpose should not be entered (Little v. Kellam [C. C.] 100 F. 353, 355; Bradford v. Belknap Motor Co. [C. C.] 105 F. 63; Ludington Novelty Co. v. Leonard [C. C. A.] 127 F. 155; Keystone Type Foundry v. Portland Pub. Co. [C. C.] 180 F. 301; Julius Kessler & Co. v. Goldstrom [C. C. A.] 177 F. 392), and that, where the plaintiff demands an accounting, he must bear the expense thereof, if he fail to establish on reference that profits were realized (Prest-O-Lite Co. v. Acetylene Welding Co. [D. C.] 259 F. 940).

[6] But where an injunction is had against unfair competition, willfully conducted by the defendant with knowledge of the plaintiff's rights, an accounting normally follows. Stevens v. Gladding et al., 17 How. 447, 15 L. Ed. 155; Williams v. Mitchell (C. C. A.) 106 F. 168; Walter Baker & Co. v. Slack (C. C. A.) 130 F. 514; Sawyer v. Kellogg (C. C.) 9 F. 601. The court below found upon the evidence that the plaintiff was entitled to an injunction as to the states of California, Washington, and Oregon. The burden of proof is, of course, upon the plaintiff to show that the defendant has made substantial profits attributable, in whole or in part, to his trade-mark (Westinghouse Mfg. Co. v. Wagner Mfg. Co., 225 U. S. 604, 32 S. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. [N. S.] 653; Ammon & Person v. Narragansett Dairy Co. [C. C. A.] 262 F. 880), and, if that burden is not sustained, it follows that he must bear the expense of the accounting. We think the decree should not be disturbed.

Decree affirmed.