[Civ. No. 17050.   Second Dist., Div. One.   Oct. 20, 1949.]

MAURICE B. SANDLER, Respondent, v. NATHAN M. GORDON et al., Defendants; CRAIG LAUNDRY, INC. (a Corporation), Appellant.

Fred Horowitz and Alvin F. Howard for Appellant.

Sydney J. Dunitz and Malcolm Archbald for Respondent.

DRAPEAU, J.—The complaint herein alleges that plaintiff and defendant were both operating diaper laundries in the county of Los Angeles; that plaintiff prepared special lists of names and addresses of his customers which defendant surreptitiously acquired and thereafter solicited such customers without the knowledge or consent of plaintiff and also without advising the customers how their names had been secured; that defendant then extended service without charge for extended periods of time for the purpose of injuring plaintiff and destroying competition, and thereby diverted many of plaintiff's customers to his damage.

Defendant's answer and cross-complaint alleged that since the inception of plaintiff's business, the latter had engaged in unfair and discriminatory business practices by means of advertising, whereby fair and honest competition was destroyed; it being further alleged that to meet such unfair practices, defendant "did offer to persons who had been customers of plaintiff free service for limited periods of time."

Upon the issues thus presented, the court found among other things: That plaintiff prepared and owned lists of customers, which defendant's employee Barr acquired by taking them from plaintiff's delivery truck as instructed by his employer;

That without the knowledge or consent of plaintiff, defendant using such lists located a large proportion of plaintiff's customers and offered and gave them free diaper laundry service;

That such conduct of defendant "was deliberately intended to ruthlessly and seriously injure plaintiff's business, and was prompted by ill will toward plaintiff; and in engaging in such conduct defendant was guilty of oppression and malice";

That a majority of such listed customers accepted defendant's offer and discontinued service with plaintiff;

That plaintiff sold certain service below his cost and below the lowest competitive price, but the purpose thereof was not to injure competitors or destroy competition;

That defendant's conduct was not justified by plaintiff's conduct, defendant's acts going "beyond any acts that might have been committed as so justified";

That plaintiff was damaged thereby in the sum of $1,400.

Judgment was accordingly entered in favor of plaintiff for $1,400 actual damages; $500 punitive damages; defendant was restrained from soliciting or servicing any of plaintiff's customers from the purloined lists; both parties were re-

strained from giving or offering to give free service or cutting prices below cost for the purpose of injuring competitors or destroying competition; and plaintiff was restrained "from advertising in any unfair or misleading manner such as (1) for ten cents per dozen per week he will supply, launder, pick up and deliver diapers, or (2) that for one dollar per week he will supply a complete laundry service or a complete baby diaper service."

Defendant appeals from those portions of the judgment which are adverse to it.

Appellant first complains that the following finding is not supported by the evidence:

"9. That plaintiff sold certain items of service below his cost and below the lowest competitive price, but that the purpose thereof was not to injure competitors or to destroy competition." In this connection it is pointed out that since the sales were made below cost, the presumption arises under section 17071, Business and Professions Code, that they were made for the purpose of destroying competition and injuring competitors, and that the record reveals no substantial evidence to overcome such presumption.

This action was brought under the Unfair Practices Act (Bus. & Prof. Code, § 17000 et seq.), section 17043 thereof making it unlawful either to sell at less than cost or give away any article or product, for the purpose of injuring competitors or destroying competition. However, section 17050(d) of the act permits sales below cost for the purpose of meeting competition.

Appellant by its answer admitted it offered free service to respondent's customers for limited periods of time, but sought to justify such conduct on the ground it was done to meet respondent's unfair practices, to wit: his advertisements that he would render certain designated services knowing that his cost therefor greatly exceeded the advertised price.

An examination of the evidence presented at the trial discloses that in August of 1947, respondent purchased the Nursery Diaper Service then operating in Long Beach with about 40 customers, the business increasing to 100 customers by October 21, 1947. During this period, appellant was operating the Crib Service as part of its laundry business, covering an extended area with some 4,000 customers of which about 100 were in Long Beach. Robert Gordon, an officer of appellant corporation, managed the Crib Service and in September of 1947, he and Robert Cunningham, owner of the Tidy Didy

Baby Laundry of Long Beach, called on respondent to protest with respect to a $1.00 a week diaper service which respondent was then advertising. According to the witness Gordon, respondent told these men that he was just starting, and in order to increase volume and build up his business, he had to cut prices. Thereafter, appellant "embarked on a plan to protect our interest there," which embodied a plan to take respondent's customers away from him.

Respondent testified that when he bought the Nursery Diaper Service, certain prices for different types of service had been established, to wit: $1.00 a week for twice a week folded bundle and $1.25 per week for three times a week folded bundle; that he raised these prices 25 cents each per week, and introduced another type of service which his predecessor did not have: an unfolded diaper bundle delivered twice a week at $1.00 per week; that he also furnished a metal container for 15 cents per week; that he ascertained what others were charging and taking that into consideration together with the prices that his predecessor had established; as well as the cost to him per month for doing business, and the fact that he wanted to build up his business as soon as he could, he evolved the prices which he charged; that some of them were higher and some were lower than his competitors charged.

With respect to his understanding of the meaning of the ad offering "complete baby laundry service for as low as $1 per week," respondent stated he meant "that my prices started at $1 per week and continued on upward depending upon the type of service the customer desired and the number of times a week a delivery and pick-up were made. . . . I meant that, in our plant, we catered exclusively to babies. We handled no other line of laundry work whatsoever. We have a complete baby laundry service to offer each mother, whether she spends $1 a week with us or whether she spends four or $5 a week, as the case may be."

In answer to the question: "In connection with the price structure you set up for your business and in connection with the advertising you caused to have placed in the newspapers, did you have any intent to injure your competitors?" appellant stated: "None whatsoever." On recross-examination, respondent testified he intended to get as many customers as he could as the result of his advertising, and from whatever source possible. When asked "Then it was immaterial to you

who had the customer at that time and what price they were paying. You were going to sell them for less and get the business?"—respondent replied: "I was going to sell them for my prices."

"The law prohibits, not all sales at less than cost, but only sales which are accompanied by the requisite intention or purpose—i.e., the purpose of injuring competitors or destroying competition. Unless the fact of intention is shown to have existed, the conclusion is that the sale did not constitute a violation of the statute." (11 Cal.Jur. 10-Yr. Supp. (1948 Pocket Part), p. 75 and authorities there cited.)

The testimony hereinabove recited sufficiently rebuts the presumption raised by section 17071, *supra*, to wit: that any sales made by respondent below cost were for the purpose of destroying competition or injuring competitors; and substantially supports the trial court's finding complained of. Moreover, the evidence is sufficient to establish that respondent's advertising was placed and the sales were made "to meet the legal prices of a competitor," permitted by section 17050(d), *supra*.

It is also urged that the finding that respondent was damaged in the sum of $1,400 is without substantial evidentiary support and therefore the award in that amount is in error.

Pursuant to section 17082 of the Business and Professions Code, a plaintiff pursuing the remedies under the Unfair Practices Act is entitled to recover the amount of the actual damages sustained by him, in addition to injunctive relief.

On this phase of the case, respondent testified that on October 26, 1947, he had 108 customers, and during the period from October 27 to November 15, he lost 73 customers to appellant; that he talked to as many as he possibly could explaining the situation to them, and between November 18 and December 8, 34 of these customers resumed service with him.

In computing his loss, respondent took the total of all customers he had on October 26, i.e., 108, eliminated therefrom the 39 which were permanently lost, and estimated that the average length of time he had the remaining 34 customers on his books was six and two-thirds months.

Mr. Heyman, a public accountant employed by respondent from September of 1947, testifying from financial statements he had made for respondent for the period in question, stated that the gross loss for customers temporarily lost was $165.54, and that the net loss, figuring variables but not including gas,

oil and lubrication, was $74.10 or $62.10 including said items. With respect to the 39 customers which were permanently lost, the witness Heyman computed that the gross revenue to be expected from them would be $282.13 per month; that the net revenue, deducting variable expenses, but not including gas, oil and lubrication, would be $171.81 per month or $153.45 per month with the last three items included.

When interrogated about the cost of oil, gas and lubrication, respondent testified that the bills for these items should have dropped with a lesser number of deliveries, but that actually they were higher during the period, because his truck was doubling back and forth trying to regain the lost customers.

Recapitulating, it seems fair to assume that the actual net loss sustained by respondent on account of the 39 customers which were lost permanently was $171.81 per month for six and two-thirds months or $1,145.40; and that the actual net loss sustained by reason of the customers temporarily lost was $74.10, aggregating a total actual damage of $1,219.50, instead of $1,400, as found by the trial court.

Referring to the claim that punitive damages were improperly awarded, the court found that because of its conduct, appellant was guilty of oppression and malice. In such cases, exemplary damages may be imposed under section 3294 of the Civil Code.

In view of the court's findings hereinbefore recited which are amply supported by the evidence, it is deemed unnecessary to discuss two additional points, to wit:

1. That respondent does not have clean hands;

2. That respondent is not entitled to damages for loss of patronage secured by illegal advertisements.

The judgment is modified by striking therefrom the figures $1,400 in the award of damages and by inserting in lieu thereof the figures $1,219.50, and as so modified, the judgment is affirmed. Each party to bear own costs on appeal.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied October 31, 1949, and appellant's petition for a hearing by the Supreme Court was denied December 15, 1949. Schauer, J., voted for a hearing.