## GENERAL ELECTRIC CO. v. SCHWARTZ et al.

### Civ. 10982.

United States District Court
E. D. New York.

July 18, 1951.

Rogers, Hoge & Hills, New York City (James F. Hoge, New York City, of counsel), for plaintiff.

Jacob W. Friedman, New York City, for defendant.

KENNEDY, District Judge.

In this suit for an injunction the complaint sets forth the claim that defendant has infringed plaintiff's registered trademarks, and has been guilty of unfair com-

petition. The defendant in affirmative defenses attacks the validity of plaintiff's trademark registrations on grounds which will be touched upon later, denies the jurisdiction of the court, charges a monopoly, and counterclaims for damages in the amount of $5,000,000. The counterclaim was abandoned at the trial.

During the pendency of this suit there was an attempt by defendant in a patent office proceeding to cancel plaintiff's first trademark registration (September 18, 1900, No. 35,089). Plaintiff (respondent) filed a motion for summary judgment which on December 28, 1950, was granted by the examiner of interferences.

One other collateral proceeding must be mentioned. On July 31, 1950, Judge Inch denied an application by plaintiff for a temporary injunction on the ground that issues of fact were raised by the pleadings and affidavits. 92 F.Supp. 966.

Plaintiff was incorporated by special act of the General Assembly of the State of New York on April 15, 1892, and has ever since borne the corporate name General Electric Company. It manufactures and sells electrical appliances, machinery and apparatus of two general types: (1) producer goods such as turbines and generators, and (2) consumer products such as toasters and electric fans. The smaller items of the latter class are called "traffic appliances" because they lend themselves to window and counter display. Electric fans, the only product here involved, come under the head of "traffic appliances".

On September 18, 1900, plaintiff registered its trademark "GE" (registration No. 35,089). The mark was described and shown to consist of script letters "GE", embossed upon metal in the form of a monogram enclosed in a circle which had ornamentation on the inner portion of its circumference. According to the registration the mark was for use on "machinery, electrical apparatus, and supply parts". Thereafter various devices were enumerated in the way of examples, but electric fans are not specifically mentioned. This trademark is referred to in what is said hereafter as the "monogram" or the "disk".

On December 25, 1934, plaintiff registered (No. 320,304) its "signature mark". This consists of the written-out words "General Electric" with the monogram between the two words. The monogram, as such, has been the subject of 19 additional registrations, and the signature of 16 additional registrations. In the original application for registration of the "signature", which it will be remembered embodies the monogram, electric fans were spoken of as one of the appliances on which the signature would be used.

Prior to April 9, 1950, defendant Schwartz was associated with City Electrical Service & Equipment Company in some kind of vague association with David Gordon, one of the proprietors of that business, which was and is conducted as a partnership. Plaintiff heretofore sued the partnership in New Jersey, and restrained Gordon and his brother-partner against violation of the trademark by a consent injunction. Prior to the issuance of this injunction and in March 1950 defendant Schwartz had received a number of fan parts and motors from Gordon. The fans were assembled at Schwartz' place of business in New York and shipped back as complete units to Gordon with plaintiff's monogram affixed or supplied. Around this time there was correspondence between the defendant and one Graham, an employee of the plaintiff, in the course of which defendant sought to get permission to reproduce plaintiff's motor identification tags in metal. This permission was refused. Nevertheless defendant procured to be manufactured metal disks or plates which reproduced plaintiff's monogram both in color and design. These disks were affixed to desk fans and pedestal fans, and a plate showing the monogram was put upon hassock fans. The pedestal fans in fact contained motors manufactured by the plaintiff. The desk fans contained no item of equipment manufactured by the plaintiff. The only component of the hassock fans, which was one of plaintiff's products, was the cord and plug. In the case of the disk used on desk and pedestal fans a legend was inscribed around the monogram in tiny letters reading

"Equipped with (GE)[1] motor distributed by Quietaire Div. of City Electric Equipment Co., New York 1, N. Y." On the hassock fans there was, as already mentioned, a plate reproducing plaintiff's monogram trademark, and again around the monogram was a legend in small letters to the effect that the fan was "Equipped with (GE) [1] cord and plug distributed by Quietaire Div. of City Electric Equipment Co., New York 1, N. Y." From time to time defendant had occasion to display photographs of the fans which he distributed. On these photographs the distinguishing legend cannot be seen because the letters are too small to show up.

Defendant continued to sell fans bearing the "GE" monogram right down to the day before the trial. On August 25, 1950, defendant organized in the State of New Jersey a corporation under the name "General Electric Corporation". Defendant has advertised fans for sale describing them as "General Electric", the word "Corporation" appearing in small letters underneath these words. On these advertisements the monogram is at the top. There can be no doubt that defendant did all of these things deliberately because on at least one occasion, as mentioned, he was told that he could not reproduce metal tags bearing the plaintiff's monogram, and on two other occasions (in conversations with one Grainger, and with Gordon) the use of the monogram by defendant was questioned, and his reply was to the effect that he would take care of whatever trouble might arise. Defendant in his deposition has admitted that the letters "GE" on electrical equipment signified plaintiff's product.

The attack on the validity of the monogram and of the signature is based upon the claim by the defendant that at various times between 1896 and 1915 the Patent Office had registered those same letters for four other products. These were respectively (1) registration No. 28,360 (June 9, 1896, expired June 9, 1926) to George Ehret, a manufacturer of beer. The letters "GE" were superimposed upon one another and arranged at the center of a six-pointed star. (2) Registration No. 41,379 (October 27, 1903, expired October 27, 1933) showed the letters "GE" enclosed within a circle also containing an anchor. This mark was for explosives manufactured by Lindener Zundhutchen-Und Thonwaaren-Fabrik of Linden, Germany. (3) The third registration, No. 101,927 (issued January 19, 1915, expired January 19, 1935) showed a circle enclosing two winged seahorses with the small letters "E" and "G" at the bottom. It applied to heating, lighting and ventilating apparatus but not to electrical apparatus. It was issued to Ehrich & Graetz of Berlin, Germany. (4) Registration No. 49,375 (February 6, 1906) was issued to Havana Commercial Company, cigar manufacturers. It has a double ellipse having on the top portion the words "La Africana", the letters "EG" in the center, and the word "Habana" in the lower portion. This is the only one of the marks alleged to be in conflict with plaintiff's which has been renewed. All of the plaintiff's marks are still in force.

There can be no doubt that the monogram shown in the 1900 registration and shown as part of the 1934 registration has been actually used by plaintiff on fans manufactured and sold by it since May 18, 1899. In fact fans were the first articles manufactured by plaintiff on which the monogram was used. The signature ("composite trademark") as such was first used on fans in 1930.

It can be seen that defendant's attack on the validity of the registration is twofold: (1) he urges that under the 1900 registration plaintiff failed specifically to mention fans in the examples it gave of "electrical apparatus" and that therefore the registration was a nullity so far as fans were concerned. And (2) as for the 1934 registration which *did* specifically mention fans it is claimed that the letters "GE" in some combination had been previously registered for other products, namely, beer, explosives, ventilating apparatus other than electrical, and cigars. These same contentions were raised by defendant in the Patent Office, and overruled by the examiner of interferences. The gist of the opinion filed by the examiner is that defendant Schwartz had no proprietary right and claimed none

---

1. The "GE" is the monogram, in large letters.

in any of the marks alleged to be in conflict with plaintiff's. The examiner also pointed out that the products on which these marks were used or were to be used were "different classes of merchandise" than those of plaintiff's in this case, that there were no defects either in form or substance in plaintiff's registration papers, and that the claim of laches was of no help to defendant Schwartz in a cancellation proceeding.

 I do not see how any different conclusions could be reached by me, independently of anything said by the examiner of interferences, even if the owners of the marks cited by the defendant were before me seriously urging that plaintiff's registrations were invalid because by them plaintiff was attempting to appropriate marks already the property of others. I would have to find and do find that the merchandise manufactured and distributed by plaintiff is so different in kind from that to be made or sold under the other marks that plaintiff was and is at liberty to appropriate and use the letters "GE". As for the contention that the 1900 registration is a nullity in the situation at bar because plaintiff failed specifically to mention "electric fans", I think this is completely weak and implausible. Fans are certainly "electrical apparatus", on the date of the issuance of registration plaintiff was already using the monogram on fans, and it certainly would be a strained construction of the registration to deny it validity on the ground that plaintiff was required to enumerate every single piece of electrical apparatus upon which it proposed to use the mark.

██ Moreover, and more important, the record shows without dispute that continuously since 1899 plaintiff has paid large sums for advertising featuring its trademarks, including the monogram, which is shown affixed to fans. In 1950 plaintiff's total advertising bill for "traffic appliances" (of which fans are a part) was $3,367,200. Of this amount $145,600 was spent for advertising fans alone.

The principal benefits gained by a valid registration are of course the constructive notice to infringers, 15 U.S.C.A. § 1072, and

the presumption of validity. But wholly apart from that, defendant admits that in fact he knew of the significance which ought to be given to the letters "GE" on electric appliances. Certainly by 1950 plaintiff had acquired a right to be protected against the use by others of the letters "GE", in a monogram which was a Chinese copy of that used by plaintiff for over 50 years and as part of a scheme to pass off on the public as plaintiff's product fans which were manufactured or assembled by those others.

This is true even though in some instances defendant did use General Electric parts in the fans which he distributed (pedestal and hassock). The use of the monogram and the plate was calculated to make purchasers think they were buying a General Electric *product,* and no citation of authority should be needed to support the view that merely using one component, or imprinting on the monogram in tiny letters a specification of the authentic component eliminates the deception. I say that no citation of authority is needed, not meaning to imply that I am attempting to formulate a general rule of law. Rather, having examined defendant's advertising and the products distributed by him, I am saying that I have not the slightest doubt that purchasers thought, as I would think, that they were buying General Electric products. The monogram is very distinctive, and because of advertising has become familiar to the public, including defendant himself, as the signature of the General Electric Company. Added flourishes in microscopic letters do not undeceive the buying public: they certainly would not undeceive me. And if I were to be told, as a purchaser, that the use of that signature on the device as a whole can be justified on the ground that some part of the device was in truth a General Electric product, I would surely feel that the morals of the market place had reached a new low.

As for the desk fans the proof underlines the fraudulent intent of the defendant. In the papers before Judge Inch on the application for a temporary injunction and at later stages of the case defendant asserted that the motors in that particular device

were in truth General Electric motors. They were not. The plaintiff traced them to their source and defendant's earlier assertions that he had purchased them from a mysterious person called "Hamilton" were never seriously pressed at the trial. So that in this instance even the tiny letters on the monogram to the effect that the motor was a General Electric product constitute a false representation.

The only conclusion that I can reach as trier of the facts is that defendant was wilfully and consciously attempting to pass off and did pass off the product of others in whole or in part as the product of the plaintiff, to gain an unfair advantage as well as to deceive the buying public.

One more point deserves to be mentioned. Defendant Schwartz urges that if I am wrong in my holding that the trademarks were validly registered, and if in fact they were not, then there is no federal question and I am without jurisdiction because there is no diversity of citizenship. But I am confident that even if I am in error on the issue of validity of the registration I still have jurisdiction to determine the issue of unfair competition and to administer appropriate remedies. Because to me this is a clear case, if there ever was one, for the application of the doctrine of Hurn v. Oursler, 1933, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148. There is only one "cause of action" pleaded. There are two grounds: on the one hand relief is asked under a federal statute, 15 U.S.C.A. § 1121, and on the other protection is sought against unfair competition. The proof to support both claims is identical. Even the registrations themselves (assuming them invalid for some reason which I am unable to discover) would be relevant and highly material on the non-statutory ground of unfair competition.

The plaintiff is entitled to a judgment with costs and injunctive relief sufficiently broad to protect it against the use by the defendant of its monogram or signature on any kind of electrical apparatus, including fans, which plaintiff manufactures or distributes. At the trial, in the course of a colloquy between court and counsel, plaintiff indicated that incidental damages (i. e.,

accounting) was not the objective, or at least the immediate objective, of the lawsuit. The passage in the record is somewhat equivocal and I am in doubt whether plaintiff is pressing a claim for incidental relief or whether it has been intentionally waived. The position can be clarified by the settlement of the judgment on notice.

I have filed findings of fact and conclusions of law.