**SINGER MFG. CO. et al. v. REDLICH et al.**

Civ. No. 12296–T.

United States District Court
S. D. California, Central Division.

Dec. 31, 1952.

Paul Hastings & Janofsky, Lee G. Paul, Robert P. Hastings, and Leonard S. Janofsky, all of Los Angeles, Cal., John F. Ryan and Reginald Hicks, New York City, for plaintiffs.

Mason & Graham, Collins Mason, and William R. Graham, all of Los Angeles, Cal., for defendants.

TOLIN, District Judge.

This is an action for trade-mark infringement and unfair competition. Plaintiff The Singer Manufacturing Company is the parent firm and manufacturer. Plaintiff Singer Sewing Machine Company is its wholly owned subsidiary. Plaintiffs' principal product is sewing machines.

The trade-marks involved are Singer, the letter "S" trade-mark and what was referred to at the trial as the oval medallion trade-mark, each of which is owned by plaintiff The Singer Manufacturing Company. The letter "S" mark is the subject of registration No. 69,900 and the oval medallion of registration No. 20,065. So far as the record shows, Singer is an unregistered common law trade-mark.

In addition to these trade-marks, plaintiffs have extensively advertised and used the trade-names "Singer Sewing Center" and "Sewing Center" to identify shops maintained by them throughout the world.

There are ninety stores of plaintiffs so identified in Southern California.

The common use of this appellation is by insertion in Singer advertising and by prominent display of the words in store windows.

Defendants contend that even if "Singer Sewing Center" is the exclusive property of plaintiffs, this interest does not extend to "Sewing Center" which they assert is in the public domain and not peculiar to plaintiffs' use.

■ Defendants contend that the trademark "Singer" is invalid because of the holding in Singer Mfg. Co. v. June Mfg. Co., 1896, 163 U.S. 169, 16 S.Ct. 1002, 41 L.Ed. 118. That case does not so hold. Our attention has been directed to some twenty unreported cases wherein District Courts of the United States have severally held "Singer" to be a valid trade-mark. In none of these decisions have the courts made a different holding than this Court now makes concerning Singer Mfg. Co. v. June. Defendants have not cited any decision which interprets that case in the strained manner defendants do. See Singer Mfg. Co. v. American Appliance Co., D.C. 1949, 86 F.Supp. 737. In the light of this judicial unanimity, as well as on our own analysis, this Court holds the common law trade-mark "Singer" valid. In view of the extensive prior judicial action it is not appropriate to again spell out the reasoning or to distinguish Singer Mfg. Co. v. June, supra. The Singer Manufacturing Company and its predecessors have been in business over 100 years and during all that time used Singer to identify themselves and their merchandise. Four and a half million family sewing machines, each carrying the three trade-marks, have been sold by plaintiffs in the United States in the past 20 years and about fifteen million dollars have been spent in advertising to keep plaintiffs' names, trade-marks, services and merchandise before the public.

. Defendants do not question the validity and plaintiffs' ownership of the oval trademark medallion and the letter "S" trademark. It is admitted that for more than 40 years the letter "S" mark was used by plaintiffs to identify their shops and their merchandise.

The Answer admits that all three trademarks have "acquired a worldwide, favorable and very valuable reputation * * *". That favorable reputation has been nurtured in California where one of the plaintiffs has long maintained its own retail and service establishments prominently located in many cities of the State. A high standard of merchandise display and attractive establishment has been standard in p'aintiffs' stores. Independent dealers have been gradually eliminated in order that plaintiffs' merchandising methods be brought under stricter control of plaintiffs. Plaintiffs have maintained a custom of showing respect for their products. This is reflected in display methods, advertising copy, sales policies, quality of merchandise offered for sale, customer relations and servicing of machines sold. Years of adherence to these policies have established an extraordinarily high good will for "Singer" sewing machines.

■ "Singer Sewing Center" is the exclusive property of plaintiffs. "Sewing Center" as mere words used together are not so distinctively and exclusively associated with plaintiffs that there is any secondary meaning or identity with plaintiffs' products or services. However, when the two words are prominently displayed in a combination arrangement aping the traditional window display of plaintiffs, then an unfair trade practice apt to mislead and confuse the public exists and will be enjoined.

Defendants Herman M. Redlich and Ruth C. Redlich are partners doing business as Sun Vacuum Stores and are the sole owners of the corporate defendants. The defendants operated stores in most of the larger cities of California, from San Diego in the South to Sacramento in the North, selling new and used sewing machines of various makes. They have carried in stock certain machines of foreign origin which superficially are close copies of certain Singer machines. Numerous prospects, attracted by the defendants' radio and newspaper advertising featuring the trade-mark Singer, have been deliber-

ately deceived by the defendants and fraudulently led to believe, contrary to fact, that these machines either were actually Singer machines or were sponsored by Singer.

Machines of domestic manufacture, but not made by plaintiffs, were likewise palmed off as Singers.

The unconscionable character of the defendants' out and out swindles was established by the testimony of many actual victims all of whom were attracted by the defendants' "Singer" advertisements, and who wanted and intended to buy the genuine products of The Singer Manufacturing Company but who had spurious machines palmed off on them as and for Singer sewing machines. These frauds were not confined to a particular area but were perpetrated in identical pattern wherever Sun did business in California. Defendants extensively offered "rebuilt" Singer machines for sale. The so-called "rebuilt" Singer machines were assemblages of sewing machine components of which some were originally of Singer manufacture but a great many of which are the products and designs of other manufacturers. The essentially non-Singer character of these assemblages is indicated by the fact that usually the cost of the parts which originated with Singer were exceeded by the cost of the non-Singer components. Frequently the only Singer component was what might be called the carcass salvaged from a treadle machine manufactured and sold by plaintiff The Singer Manufacturing Company as much as fifty to sixty years ago. Moreover, the defendants' assemblage incorporating such a carcass was almost invariably sold as an electric sewing machine.

Defendants have represented and palmed off such "rebuilts" as and for the genuine products of the plaintiffs.

Many of defendants' customers were unanimous in condemning as "no good" the so-called Singer "rebuilts".

Problems of obtaining replacement parts were frequent and defendants, while still claiming the products to be of Singer manufacture, were uncooperative in supplying parts. Often Singer parts would not fit.

The defendants frequently concealed the antiquity of their machines.

Customers were led to believe and thought they were rebuilt by the Singer Company. Sometimes the defendants varied their falsehoods by representing that these machines had all Singer parts and, at other times, even representing that they were new Singers.

Defendants engaged in extensive advertising both in newspapers and by radio. The advertising has appeared in 66 newspapers. Their consistent policy and practice have been to shape their advertising to be completely dominated by the word "Singer". They have also displayed the name Singer on their store fronts, along with the words "Service and Parts" and "New and Rebuilt". They did not actually handle Singer parts and never stocked new Singer machines.

In recent years while continuing to use "Singer" extensively in their advertising, defendants have undertaken to disparage and dissuade attracted customers from buying the advertised merchandise. They urged prospects to buy other machines and, more particularly, the foreign-made machine.

For the past several years' defendants' sales of so-called "rebuilt" sewing machines marked Singer accounted for only some 14% of total sales. During this time defendants devoted at least 70% of their advertising expenditure to featuring the mark Singer.

Defendants advertised Singer "rebuilts" at exceedingly low prices and appealed mainly to low income purchasers. Defendants produced evidence of small, indefinite and sometimes obscurely placed insignia which they had placed on their machines and which identified defendants as the "rebuilders". Use, or retention on the goods, of the original manufacturer's names and marks is not justified by the mere *addition* of a notice to the effect that the products have been changed. Defendants' use of a "rebuilder's notice" on the machines is not a license to use plaintiffs' trade-marks.

In Ingersoll v. Doyle, D.C., 247 F. 620, defendants' offer to use a notice was rejected, the court saying, at p. 621:

" * * * They would still be marketing, as Ingersoll watches, watches not such in their entirety, but new constructions. * * *"

See also Prest-O-Lite Co. v. Davis, D. C., 209 F. 917; Searchlight Gas Co. v. Prest-O-Lite Co., 7 Cir., 215 F. 692; General Electric Co. v. Schwartz, D.C., 99 F. Supp. 365.

Some of the witnesses were aged pensioners and others young housewives, obviously drawn to trade with defendants by the appealing combination of plaintiffs' good will and very low advertised prices.

The customers were, if possible, switched to the foreign machine usually under a direct misrepresentation that it was built abroad by plaintiffs and, for vague reasons incidental to sale of imported merchandise, necessarily sold under a non-Singer name. Availability and inter-change of Singer parts was assured. The fraud was usually discovered when the customer sought to obtain service from one of plaintiffs' stores, or tried to apply a genuine Singer part purchased from one of plaintiffs' stores. The Singer parts, when obtained from plaintiffs who were the only source of supply, would not fit. Replacement parts for the foreign machine were in short supply. Defendants having made their sale, were disinterested in continuing service and the transaction often found its way to litigation in the Small Claims or some similar court. As might be expected of a business so steeped in fraud, defendants' stores became shabby and unattractive. The good will of plaintiffs and their products suffered. The good reputation of Singer was damaged.

Many of defendants' stores ultimately failed and were closed. It was claimed at the trial that defendants could not produce certain sales records which plaintiffs had asked be brought to Court. Storage in remote places and the usual complications of liquidation of a retail store were advanced as excuses.

The principal problem in the case is that of damages. Plaintiffs have asked for the profits realized by the infringers of their trade-marks. They have asked for general damages upon the unfair competition basis of the case. They have further asked for exemplary or punitive damages. They are entitled to all three.

As early as 1896, the Supreme Court laid at rest whatever doubt had previously existed as to whether an accounting could be had in an unfair competition case.

" * * * where an injunction is had against unfair competition, willfully conducted by the defendant with knowledge of the plaintiff's rights, an accounting normally follows. (Citing cases.)" Matzger v. Vinikow, 9 Cir., 17 F.2d 581 at page 584.

The same rule is followed in the California state courts:

"Entirely apart from the question of actual damage, the owner of a trade-mark is entitled to recover from an infringer the profits realized by the latter from sales under the simulated trade-mark. * * * The same rule applies to cases of unfair competition, in which, while there is no violation of an exclusive right in a technical trade-mark, the defendant has used devices calculated to pass off his goods as those of plaintiff." Modesto Creamery v. Stanislaus etc. Co., 168 Cal. 289, 142 P. 845, 847.

As stated by the Court of Appeals of the 6th Circuit:

" * * * the usual practice contemplates an accounting and that such practice should be followed, and an accounting ordered, unless it is made clearly and certainly to appear that neither upon the existing record, nor upon any record which complainant can make before the master, could there be any substantial recovery. If there remains any fair probability that the complainant can produce the necessary proof, or that, upon final hearing, and as aided by all such proof, the trial court or the reviewing court may

think that complainant is entitled to a recovery of damages or profits (beyond the amount of any which may be tendered, if a tender is made), then the complainant should have the opportunity to make and present his case." Merriam Co. v. Saalfield, 6 Cir., 198 F. 369, 371.

Despite the difficulties apparent if an accounting be attempted, the plaintiffs are entitled to an accounting. Upon their undertaking to deposit funds for compensation of a master, the Court will appoint a master to determine an award of damages based upon an accounting of gains and profits which defendants made through their unfair practices. If plaintiffs elect to pursue this remedy, they shall, within 60 days, deposit $1,000 into the Registry of the Court, to be applied upon Master's fees and expenses as will be determined by further order. The payment of such fees will be taxed against defendants. Because defendants are dubious credit risks, the Court will protect the Master by requiring plaintiffs to advance his charges and look to defendants for recoupment.

Defendants maintained eight stores in California. The unfair competition paralleled slander in the degradation which inured to plaintiffs' good will and reputation. This was an actual loss to plaintiffs over and above their loss of profits resulting from confusion of goods and palming off of defendants' wares. It is in the nature of depreciation of good will and offers problems of assessment of damages similar to those which confront a court in determining damages for defamation where the slander is slander *per se*. From all the evidence, the Court finds this item of damage at $1,500 for each one of defendants' eight establishments. This item of damage totals $12,000.

■ The defendants' conduct in the instant case was fraudulent, deliberate, wilful and wanton in the extreme. Their widespread sales of foreign machines were effected by deliberate falsehoods and the grossest kind of deception. At least one witness identified the defendant Herman M. Redlich as the one who had defrauded her, thus giving the lie to the defendants' attempt to blame the abuses complained of on their salesmen. The uniformity of the practices is evidence of some guiding mind. The Court finds that defendants Herman M. Redlich and Ruth C. Redlich (Mrs. H. Redlich) commanded the sales personnel. The instructions given the defendants' salesmen further confirm the deliberateness of the frauds. The defendants' advertising, their oral misrepresentations, their machines, their store signs, their booklets, and their evasion of swindled customers, all demonstrate beyond question an over-all plan of deception, deliberately conceived and ruthlessly carried out. It is appropriate in such a case to award litigation expenses as compensatory damages. This is particularly so because defendants long persisted in their fraud after notice.

"In the present case, there was direct proof that because of the fraudulent and wilful infringement and unfair competition of appellee, appellant incurred legal expenses aggregating $18,515.03. Counsel's fees necessitated by the tort have been said in some instances to be recoverable as a part of the compensatory damages and in other cases as a part of exemplary damages. As the master's finding of wilful and fraudulent conduct is sustained by the evidence, this sum was recoverable as compensatory damages and hence properly included in the amount recommended by him." Aladdin Mfg. Co. v. Mantle Lamp Co., 7 Cir., 116 F.2d 708, 717.

There is nothing novel in the concept of awarding the successful party attorney's fees paid and expenses incurred in litigation, *stemming from the opponent's fraudulent conduct and but for which the litigation would have been avoided.*

In Hartford-Empire Co. v. Shawkee Mfg. Co., 3 Cir., 163 F.2d 474, 479, 480 the Court held Shawkee entitled to legal expenses and disbursements on the theory of restitution because Hartford had been found guilty of fraud in utilizing in the Patent Office and Courts a laudatory article in support of patentability of invention, which article purported to be unbiased but was, in fact, procured by Hartford.

Plaintiffs' legal expenses and disbursements will be awarded as damages upon proof being made. Plaintiff may notice a hearing to take such evidence of legal expenses upon any motion day.

"In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." Cal. Civil Code, Sec. 3294.

In the case of Sandler v. Gordon, 1949, 94 Cal.App.2d 254, 210 P.2d 314, where the defendant stole plaintiff's customer list and used it to plaintiff's damage, the court held that "punitive damages" were proper. The Court said in 94 Cal.App.2d at page 279, 210 P.2d at page 317:

"Referring to the claim that punitive damages were improperly awarded, the court found that because of its conduct, appellant was guilty of oppression and malice. In such cases, exemplary damages may be imposed under section 3294 of the Civil Code."

See also, Aladdin Mfg. Co. v. Mantle Lamp Co., supra.

The Court finds that the torts of defendants herein mentioned were committed with fraudulent, oppressive and malicious intent and fixes exemplary damages at $10,000.

An injunction will issue enjoining defendants:

a. From directly or indirectly representing contrary to fact that any sewing machine advertised, offered for sale or sold by defendants is made or sold by plaintiffs or is in some way connected with plaintiffs or representing that there is some business connection between plaintiffs and defendants.

b. From directly or indirectly representing that the foreign machines heretofore sold by defendants or any other sewing machines manufactured by others than plaintiffs are the same as plaintiffs' machines or that the parts of such machines are interchangeable with plaintiffs' parts or that such machines or any parts thereof are made by a concern which makes machines or parts for plaintiffs.

c. From selling or otherwise disposing of any "rebuilt" sewing machine unless said defendants shall remove therefrom plaintiffs' names and trade-marks and, in the place of the trade-mark "Singer" on the horizontal arm, affix a noninfringing name of defendants' selection, followed by the word "Rebuilt"; provided, however, that in addition defendants shall permanently affix to the head of any such machine a square or rectangular medallion or decalcomania bearing a notice reading:

"A used Singer head, reconstructed, repainted, electrified, and modified by Sun Vacuum Stores, Los Angeles, California, with Sun's parts, motor, controller and cabinet."

In such notice, any non-infringing name may be used in place of "Sun Vacuum Stores" and "Sun"; and "Singer" shall not be emphasized or different in color, size or style of type from the wording of the remainder of the notice.

d. From using plaintiffs' names or trade-marks in advertising any "rebuilt" sewing machine except that in their printed advertising defendants may use substantially the following statement:

"A used Singer head, reconstructed, repainted, electrified, and modified by Sun Vacuum Stores, Los Angeles, California, with Sun's parts, motor, controller and cabinet."

In such statement any noninfringing name may be used in place of "Sun Vacuum Stores" and "Sun"; and "Singer" shall not be emphasized or different in color, size or style of type from the wording of the remainder of the notice; and in all of defendants' advertising which incorporates such statement, the defendants' "rebuilt" sewing machines shall be advertised under the name "Sun" or other noninfringing name of defendants' selection as "Sun Rebuilt sewing machine".

e. From applying to any "rebuilt" sewing machine head any of plaintiffs' machine transfer designs.

f. From making, procuring, selling or disposing of or using any decalcomania, name-plate, label or the like bearing plaintiffs' machine transfer designs, names, or trade-marks, or any simulation thereof, except in the notice referred to in paragraph c.

g. From distributing or using any sewing machine instruction booklet which carries any of plaintiffs' names, trade-marks or sewing machine model numbers, in connection with any "rebuilt" sewing machine, or any sewing machine made by someone other than the plaintiff, The Singer Manufacturing Company, except that instruction booklets used in connection with "rebuilt" sewing machines may carry the following legend:

"A used Singer head, reconstructed, repainted, electrified, and modified by Sun Vacuum Stores, Los Angeles, California, with Sun's parts, motor, controller and cabinet."

In such legend, any noninfringing name may be used in place of "Sun Vacuum Stores" and "Sun"; and the name "Singer" shall not be emphasized or different in color, size or style of type from the wording of the remainder of the legend; and if such legend is used the "rebuilt" sewing machines referred to in the booklet shall be designated under the name "Sun" or other noninfringing name, as "Sun Rebuilt sewing machines."

h. From using any of plaintiffs' names or trade-marks in signs or other advertising to attract customers, inquiries or orders, for the purpose of selling or furthering the sale of goods other than those advertised.

i. From distributing or using the sewing machine instruction booklet entitled "You Have Invested Wisely" or any other similar booklet which is to a great extent a copy of any of plaintiffs' instruction booklets.

j. From displaying the name "Singer" on their signs or other advertising, in association with the words "Service", "Parts", "New" or "Rebuilt".

k. From using the words "Singer Sewing Center" on signs or advertising.

1. From misusing plaintiffs' names, trade-marks and trade indicia in any manner whatsoever.