[Civ. No. 27. Fifth Dist. May 23, 1962.]

THE PEOPLE, Plaintiff and Appellant, v. COIT RANCH, INC., Defendant and Appellant.

Stanley Mosk, Attorney General, Paul M. Joseph, Deputy Attorney General, Rowell, Lamberson & Thomas and Richard Z. Lamberson for Plaintiff and Appellant.

L. Kenneth Say, Hutchinson & Quattrin and J. Albert Hutchinson for Defendant and Appellant.

BROWN, J.—This appeal originated in two actions consolidated for trial. Since the nature and type of pleadings in both cases are substantially identical, they will be herein referred to in the singular. The facts may be summarized as follows:

By order dated March 31, 1959, the Director of Agriculture levied an assessment, recommended by the Cantaloupe Advisory Board, upon California cantaloupe producers and handlers, for successive periods during the 1959 marketing season, under a marketing order issued by the director pursuant to the California Marketing Act of 1937, as amended. (Agr. Code, §§ 1300.10-1300.30.) The assessment provided for a combined rate allocated proportionately to administrative and inspection expense and advertising and sales promotion expense. (Agr. Code, § 1300.17, subd. (c).)

Defendant, a producer and handler of cantaloupes, paid that portion of the assessment allocated to defray administrative and investigation expense, but refused to pay that portion allocated to the expense of advertising and sales promotion.

These suits brought by the Attorney General to collect the unpaid portions of the assessment for six successive periods, to impose civil penalties, for collection costs, court costs and for injunctive relief followed. Defendant raised affirmative defenses, only one of which is relevant here, i.e., that the provisions of the marketing order conferring authority upon the Board to advertise and promote sales of cantaloupes expressly provided that, ". . . such plans or programs make no false or unwarranted claims on behalf of cantaloupes, . . ." and that one item of advertising violated this prohibition by representing ". . . that California Cantaloupes are 'picked fully ripe and rushed to you on ice.' That such advertising is false in that California cantaloupes are not shipped and/or rushed to any market on ice and further, that California cantaloupes are not picked fully ripe." Defendant also interposed cross-complaints praying for a declaratory judgment in respect to the assessment and for an injunction. To the cross-complaints plaintiff interposed the defense of governmental immunity.

After a nonjury trial but prior to judgment, plaintiff made motions to strike the defenses and cross-complaints, for summary judgment and for judgment on the pleadings. For the first time the doctrine that defendant had failed to exhaust an administrative remedy and the court was thereby precluded from granting judicial relief made its appearance in the case. The motions were denied.

The trial court made findings of fact and conclusions of law, and entered judgment for plaintiff for $10,458.95, accrued interest of $1,007.81, civil penalties of $6.00 ($1.00 for each of six violations), $230.70 costs of suit and enjoined the defendant from carrying on business, either directly or indirectly, as a producer or handler of cantaloupes within the State of California, without first paying the amounts of the assessment and interest. Both parties appeal.

*Exhaustion of Administrative Remedy as a Condition Precedent to Obtaining Judicial Relief*

Defendant first contends that the court erred in determining that this is a proper case for application of the nonexhaustion doctrine. In support of its contention, defendant argues (1) that the doctrine, injected into the case by plaintiff after trial on the merits, came too late and hence the court was foreclosed from considering it; (2) that the appeal procedure set out in the marketing order is void, constituting an ultra vires act on the part of the director, since the statute failed to

set up an administrative review remedy; (3) that, if the remedy is valid, defendant is not required to exhaust it before seeking judicial relief because it is couched in permissive, rather than mandatory, language; (4) that application of the rule should not be made to defeat defenses and cross-complaints for declaratory relief and injunction; (5) and that, in any event, this case falls within either of two recognized exceptions to the rule, i.e., the entire advertising assessment was unlawful and void, and if application of the rule is upheld, defendant will suffer great and irreparable harm. Defendant's arguments have been answered by the decisional law of this state.

In *Abelleira* v. *District Court of Appeal*, 17 Cal.2d 280, 293 [109 P.2d 942, 132 A.L.R. 715], our Supreme Court concluded ". . . that exhaustion of the administrative remedy is a jurisdictional prerequisite to resort to the courts." (See also *United States* v. *Superior Court*, 19 Cal.2d 189, 194 [120 P.2d 26] ; *Woodard* v. *Broadway Fed. Sav. & Loan Assn.*, 111 Cal.App.2d 218, 221 [244 P.2d 467] ; 1 Witkin, California Procedure, Jurisdiction, § 44, p. 316.) A court may not acquire jurisdiction over the subject matter of a controversy by consent, waiver or estoppel (*Sampsell* v. *Superior Court*, 32 Cal.2d 763, 773 [197 P.2d 739] ; *Unemployment etc. Com.* v. *St. Francis etc. Assn.*, 58 Cal.App.2d 271, 275 [137 P.2d 64]). Jurisdiction of a court over the subject matter may be challenged at any stage of the proceeding. Therefore, it is immaterial that the doctrine of nonexhaustion was not reserved in the pretrial order or raised prior to trial on the merits.

In *United States* v. *Superior Court, supra,* 19 Cal.2d 189, it was held that the requirement of exhaustion of administrative remedies applies not only to orders which are erroneous, but to those assailed as a nullity because illegally adopted. At pages 194-195, the court stated:

"But there is no substantial difference, insofar as the necessity for resort to administrative review is concerned, between an erroneous order and one which, it is claimed, is being executed in violation of statutory authority.

"Conceding the existence of such a distinction, however, the doctrine of exhaustion of administrative remedies is not so limited. For example, it lies within the power of the administrative agency to determine in the first instance, and before judicial relief may be obtained, whether a given controversy falls within the statutory grant of jurisdiction [cita-

tions]. And even where the statute sought to be applied and enforced by the administrative agency is challenged upon constitutional grounds, completion of the administrative remedy has been held to be a prerequisite to equitable relief [citations]." ( See also *Brock* v. *Superior Court,* 109 Cal. App.2d 594 [241 P.2d 283].) Thus, defendant's position that the appeals procedure contained in the marketing order is the invalid result of an ultra vires act will not aid it. It is for the director to first determine the extent of administrative authority before resort to the courts may be made. (*Hill* v. *Brisbane,* 66 Cal.App.2d 15 [151 P.2d 578].)

 The rule of nonexhaustion is applied even though the administrative remedy is couched in permissive language. (*Alexander* v. *State Personnel Board,* 22 Cal.2d 198, 200 [137 P.2d 433]; *Clark* v. *State Personnel Board,* 61 Cal.App.2d 800 [144 P.2d 84]; *Child* v. *State Personnel Board,* 97 Cal. App.2d 467 [218 P.2d 52]; *United States* v. *Ruzicka,* 329 U.S. 287 [67 S.Ct. 207, 91 L.Ed. 290]; *United States* v. *Turner Dairy Co.,* 166 F.2d 1.)

 The rule is applicable to preclude defenses (*People* v. *West Publishing Co.,* 35 Cal.2d 80 [216 P.2d 441]; *People* v. *Sonleitner,* 185 Cal.App.2d 350 [8 Cal.Rptr. 528]; *People* v. *Keith Railway Equipment Co.,* 70 Cal.App.2d 339 [161 P.2d 244]); to actions for declaratory relief (*Hoyt* v. *Board of Civil Service Comrs.,* 21 Cal.2d 399 [132 P.2d 804]; *Louis Eckert Brewing Co.* v. *Unemployment Reserves Com.,* 47 Cal. App.2d 844, 847 [119 P.2d 227]; *Walker* v. *Munro,* 178 Cal. App.2d 67 [2 Cal.Rptr. 737]); and to actions seeking injunctive relief (*United States* v. *Superior Court, supra,* 19 Cal.2d 189; *Teeter* v. *City of Los Angeles,* 209 Cal. 685, 687 [290 P. 11]).

 We cannot agree that the entire advertising assessment was unlawful and void so as to bring this case within the purview of cases cited by defendant, such as *City & County of San Francisco* v. *County of San Mateo,* 36 Cal.2d 196 [222 P.2d 860]; *Security-First Nat. Bank* v. *County of Los Angeles,* 35 Cal.2d 319 [217 P.2d 946]; and *Parrott & Co.* v. *City & County of San Francisco,* 131 Cal.App.2d 332 [280 P.2d 881]. The cited cases tend to establish the proposition that a taxpayer is not required to exhaust an administrative remedy before a board of equalization where the tax is invalid in its entirety because the property taxed is either outside the jurisdiction of the taxing agency, is nonexistent, or is exempt. The underlying rationale is that the Board of Equal-

ization has authority to adjust a tax by reclassification or revaluation of subject property, but lacks authority to adjudicate invalidity of the tax. Here, the *assessment* is a valid assessment, levied in accordance with procedures outlined in the act, within the permissible statutory amount, designed to effectuate one of the primary purposes of the act, and falling not upon this particular defendant alone, but upon all producers and handlers of cantaloupes within this state. Neither the assessment nor the purpose for which it was levied is invalid. The claimed illegality was born of a collateral, remote contract entered into between the board and a private advertising agency. The act expressly makes the director responsible for administration and enforcement of its terms. The question of whether the board has acted illegally or has entered into a contract for an illegal purpose falls peculiarly within the administrative functions of the director. He should have the first opportunity of policing programs and persons subject to his jurisdiction and such questions should be presented to, and be decided by, him before there is court interference. Therefore, under the particular facts of this case, the rule requiring defendant to exhaust its administrative remedy before seeking judicial relief is applicable.

█ The defendant's claim that it will suffer irremedial injury if application of the nonexhaustion doctrine is upheld is not supported by the record it has brought to us. That record discloses that defendant suffered no injury by reason of the advertising program. On the contrary, Mr. Coit testified that defendant received a greater profit from the sale of its cantaloupes in 1959 than was received in 1958. But it is claimed that payment of the assessment will constitute financial injury. A logical extension of that proposition, if adopted, would permit every dissident taxpayer, in all instances where the taxing agency is authorized to bring enforcement actions, to defer payment awaiting the outcome of lengthy litigation in which he may test his grievances by way of defense, thus obstructing and frustrating the economic and orderly processes of government.

### Constitutionality of the Statute

█ Defendant next contends that section 1300.16, subdivision (a)(2) of the Agricultural Code which provides that the director may not promulgate a marketing order, or amendment thereto, ". . . unless and until . . . such marketing order or amendment thereto has been assented to in

writing by not less than sixty-five percent (65%) of the producers who are engaged, within the area . . ." is unconstitutional and void. We believe the last sentence contained in the above quoted portion of the opinion in *United States* v. *Superior Court, supra,* 19 Cal.2d 189, compels us to hold that defendant must exhaust the administrative remedy before presenting the constitutional question to a court. (See also *Security-First Nat. Bank* v. *County of Los Angeles, supra,* 35 Cal.2d 319, 321; *Morris* v. *Municipal Court,* 110 Cal.App.2d 269 [242 P.2d 339].) Exhaustion of that remedy does not foreclose it from raising the constitutionality of the statute in a subsequent judicial proceeding (*Metcalf* v. *County of Los Angeles,* 24 Cal.2d 267, 272 [148 P.2d 645] ; *Floresta, Inc.* v. *City Council,* 190 Cal.App.2d 599, 612 [12 Cal.Rptr. 182]). Nor do the cases of *State Board of Dry Cleaners* v. *Thrift-D-Lux Cleaners,* 40 Cal.2d 436 [254 P.2d 29] and *Allied Properties* v. *Department of Alcoholic Beverage Control,* 53 Cal.2d 141 [346 P.2d 737], to which defendant refers us, warrant a different conclusion. The nonexhaustion doctrine was not raised in either of the cited cases and therefore the question was not before, or considered by, the court.

### Other Remedies

Running like a leitmotif through defendant's briefs are references to other types of relief which, it is claimed, are applicable to the facts of this case and would operate to defeat recovery, such as taxpayers' suits, criminal sanctions which may be imposed upon State officials guilty of misconduct, and the like. These arguments deserve but brief comment. Defendant's attack is limited by the record before us and we will not speculate on the imaginary outcome of possible civil or criminal procedures which may be available to defendant.

### The Injunction

Both parties appeal from the decree enjoining defendant from carrying on business unless the balances due on the assessment are paid. In support of its contention that under section 1300.19, subdivision (h) of the Agricultural Code the trial court's powers are limited to enjoining *future violations,* defendant places its main reliance on, and quotes from, the case of *People* v. *Paramount Citrus Assn.* (Jan. 2, 1957) 147 Cal.App.2d 399 [305 P.2d 135]. In that case it was found that defendant lemon processor had violated a marketing order requiring it to place a percentage of its lemons into a stabilization pool. A mandatory injunction ordering defend-

ant to forthwith deliver the lemons withheld and enjoining it from engaging in business as a processor until it had rectified past delinquencies was held by the appellate court to be erroneous. The holding was predicated upon the ground that the trial court's powers were limited by section 1300.19, subdivision (h) to enjoin future violations and to condition defendant's continuance in business upon future compliance with the marketing order. At that time the section provided: "Upon compliance with Section 527 of the Code of Civil Procedure of the State of California, the court may issue a temporary restraining order and preliminary injunction as in other actions for injunctive relief and upon trial of such actions, if judgment be in favor of plaintiff, the court shall permanently enjoin defendant from further violations."

That portion of the opinion was correctly decided under section 1300.19, subdivision (h) as it then read, and would fully support defendant's contention in this case were it not for a subsequent 1957 amendment. By this amendment the Legislature enlarged the trial court's powers by providing that:

"If it appears to the court upon any application for a temporary restraining order, or upon the hearing of any order to show cause why a preliminary injunction should not be issued, or upon the hearing of any motion for a preliminary injunction, or if the court shall find, in any such action, that any defendant therein is violating, or has violated any provision of this chapter, or of any marketing order, or any rule or regulation duly issued by the director hereunder, then the court shall enjoin the defendant from committing further violations, and may compel specific performance of any obligation imposed by a marketing order, or any rule or regulation issued by the director hereunder."

It seems obvious that legislative action immediately following *Paramount Citrus* was intended to cure the impact of that decision on the injunctive power of a trial court determining controversies arising under the act, and permit both mandatory and prohibitory injunctions to compel compliance with marketing orders issued under the act. Implicit in the trial court's finding that defendant in the case before us was liable for payment of the assessment, with interest, is the further finding that it had violated the marketing order and thus brought itself within the ambit of the section. ▮▮▮ As was said in *Burks* v. *Poppy Construction Co.*, 57 Cal.2d 463,

471 [20 Cal.Rptr. 609, 370 P.2d 313], "Under the police power reasonable restrictions may be placed upon the conduct of any business and the use of any property [citations]. . . ."

We are of the opinion that the provision for a mandatory injunction to compel compliance with an assessment levied for the purpose of carrying out and enforcing the California Marketing Act, which act constitutes a complete legislative plan for regulating all phases of the agricultural industry in this State, is a reasonable exercise of the police power. Accordingly, we must hold that the mandatory injunction issued by the trial court is not erroneous. Other cases cited by defendant are too remote in their facts to justify discussion. A consideration of its arguments does not change our conclusion that there was no error in this respect.

Turning to plaintiff's appeal on this point, it is contended that the trial court erred in failing to issue a prohibitory injunction. The gist of its argument is that the section is couched in mandatory, rather than discretionary, language and binds the court if a violation be found. It cites *Kofsky* v. *Smart & Final Iris Co.*, 131 Cal.App.2d 530, 532 [281 P.2d 5]; *Porter* v. *Fiske*, 74 Cal.App.2d 332, 338 [171 P.2d 971], and other cases which establish the proposition that, where injunction is authorized by statute, violation of the statute constitutes a sufficient ground for issuance of injunction and equitable grounds for relief are irrelevant. Conceding the soundness of those decisions as applied to their particular facts, we are not persuaded that the language of the section here under consideration imposes upon a trial court an absolute, blind, unreasoning duty to grant a prohibitory injunction, regardless of the necessity of such a decree. In this case, the court expressly found that it was untrue that, unless restrained, the defendant would not in the future comply with the provisions of the act, marketing orders and orders issued thereunder. The finding is amply supported by the evidence. The record discloses that the advertising of which defendant complains was discontinued during the 1959 marketing season, and that being the only ground upon which defendant's refusal to pay the assessment was based, future violations are not threatened. An injunction speaks from the date of judgment and operates prospectively. When the court made its judgment on January 18, 1961, it could well conclude that the necessity for a prohibitory injunction was past and such a prohibitory decree of injunction would constitute a futile and unjust act. There was no error in this respect.

### The Findings

 The defendant contends that the judgment must be reversed with directions to enter judgment for defendant on the findings on file. It argues that the findings on all material issues support judgment in its favor whereas judgment was actually rendered in favor of plaintiff. We cannot agree. A separate set of findings was made for each of the two actions consolidated for trial. Where actions are consolidated, a single set of findings of fact and conclusions of law and a single judgment should be made, but under the rule stated in *Wolfson* v. *Beatty*, 118 Cal.App.2d 392, 398 [257 P.2d 1017], we may consider the two sets as one.

The court found that the action was brought by the Attorney General on complaint of the director for the enforcement of the California Marketing Act, the marketing order and assessment order issued thereunder; that the director had performed all things required of him to bring the assessment into legal being; that defendant is a corporation and is a producer and handler subject to the assessment; that the assessment became due and remained unpaid, after demand; that it is not true that defendant became liable for payment of $500 for each violation by way of civil penalty, or for collection costs or for attorneys' fees, but it is true that defendant became liable for a civil penalty in the sum of $1.00 for each of six violations. The court then made appropriate findings to support the injunction and found that the defendant failed to exhaust an administrative remedy and by reason thereof the court was precluded from deciding issues raised by defendant's affirmative defenses or its cross-complaints. For reference these findings will be referred to as Part I.

Defendant does not claim that the above findings are unsupported by the evidence. On the contrary, it does not dispute the existence of the assessment order, its own status as one subject to the assessment, the manner of calculating the balances due thereunder, or the fact that it refused to pay. There was ample evidence to support the above findings. They are therefore determinative of this phase of the controversy and warrant judgment for plaintiff.

But defendant contends additional findings made by the trial court support and compel judgment for defendant. The findings then relate: "Nevertheless, the Court having before it the evidence finds the facts with reference to said defenses and causes of cross-complaint as follows:" and then specifically found that the advertising containing the words,

"Picked fully ripe and rushed to you on ice" superimposed upon a colored picture depicting ripe cantaloupes, whole and cut in half, in direct contact with cubes and particles of ice, made false and unwarranted claims for California cantaloupes; that such cantaloupes are not picked fully ripe but at a stage of maturity calculated to enable them to reach the market at a stage of firmness for consumption at the time of purchase, and that the melons are not shipped in direct contact with ice but rather are precooled by a process of placing ice upon the upper tier of crates of cantaloupes in the transporting vehicle; that such advertising has not wrongfully or otherwise interfered with the sale of defendant's cantaloupes and defendant has suffered no injury thereby; that the advertising of which complaint is made had been discontinued since the 1959 season, and irreparable injury lacking, the injunction sought by defendant would serve no useful purpose. For reference, these findings will be referred to as Part II.

Defendant relies upon and quotes from *Woodie* v. *Byram,* 132 Cal.App.2d 651, 655 [282 P.2d 920] : ". . . the judgment appealed from is not supported by the findings, because the material findings are in favor of appellants, and the judgment, nevertheless, is against them." Such is not our case. Nor does the *Estate of Dow,* 120 Cal.App.2d 296 [260 P.2d 970], cited by defendant, aid it. In that case the trial court denied motions for orders compelling an administratrix to close a decedent's estate and terminate a family allowance which had existed in her favor for some 22 years, although it found that the estate was in a condition to be closed and it was in the best interests of those concerned to bring the administration to a close. No finding supported the order denying the motions. Obviously the findings, being contradictory to the judgment, required reversal.

It cannot be said that the detailed, express findings supporting judgment for plaintiff in our case are not findings on material issues. Plaintiff's entire cause of action is predicated upon the existence of the facts which the trial court meticulously found in Part I to be true.

What, then, is the effect of the findings which we have designated as Part II? In seeking the answer we are bound by well established canons of construction. As stated in 48 California Jurisprudence 2d, Trial, § 314, p. 317 : "They will receive a liberal but reasonable construction, in order to sustain rather than defeat the judgment. They will be construed with reference to the issues raised by the

pleadings. If there are several findings they will be considered together, and as a whole, and if there is a conflict or inconsistency among them they will be reconciled, if possible, with a view of sustaining the judgment. The judgment will not be set aside unless the findings are incapable of being reconciled.''

 It is true that no judgment can properly be entered when the court finds both for the plaintiff and the defendant on a material issue (*Learned* v. *Castle,* 78 Cal. 454, 460 [18 P. 872, 21 P. 11]). We do not view Part II of the findings as supporting judgment for defendant. It is clear that, the trial court having found that the doctrine of non-exhaustion of an administrative remedy foreclosed defendant from maintaining its defenses and cross-complaints, the findings contained in Part II should not have been made at all. At that point all affirmative relief requested by defendant vanished from the case, and all evidence theretofore adduced in support of defendant's position became inadmissible. Obviously with no jurisdiction to consider the defenses and cross-complaints, the court was in no position to find on any issue raised thereby. However, these unnecessary findings did no harm and may be treated as surplusage. Even though there is some apparent inconsistency with the finding of jurisdiction lacking, Part II is not contradictory to Part I, and may be regarded as an unnecessary alternate ground of decision. Part I of the findings supports judgment for plaintiff on the theory that plaintiff established that the balances of the assessment were due and defendant failed to exhaust its administrative remedy. Part II also warrants a plaintiff's judgment on the merits of the issues raised by the defenses and cross-complaints. We are of the opinion that the findings are, therefore, not contradictory, and that Part II must be disregarded as surplusage (*Baird* v. *Ocequeda,* 8 Cal.2d 700, 703 [67 P.2d 1055] ; *Martinez* v. *Martinez,* 41 Cal.2d 704, 705 [263 P.2d 617] ; *Learned* v. *Castle, supra,* 78 Cal. 454, 460).

### Failure to Allow Collection Costs

 Plaintiff next charges error because the trial court refused to allow an amount equal to 10 per cent of the unpaid assessment as collection costs (Agr. Code, § 1300.20). From our study of the Act and the legislative history of section 1300.20, we have concluded that the collection costs in dispute are not a proper item of recovery in an action brought in the name of the People of this state.

We first consider section 1300.19, which provides remedies and procedures for criminal, civil and administrative actions. Our concern is limited to the provisions for civil relief as they apply to this case. In the event of a violation, the director may make complaint to the Attorney General (§ 1300.19 subd. (c)), who may bring a superior court suit, *in the name of the People of this state* for appropriate relief depending upon the nature of the violation (§ 1300.19, subd. (g)), for a civil penalty not to exceed $500 for each violation (§ 1300.19, subd. (b)), for court costs (§ 1300.19, subd. (i)), and for injunctive relief (§ 1300.19, subd. (h)). It thus appears that by section 1300.19 a complete civil cause of action with all necessary relief, including a special provision for court costs, is conferred by the Legislature upon the *People*.

Turning to section 1300.20, unchanged since 1941, we find that the first paragraph thereof makes an unpaid assessment a personal debt due to the *director* and authorizes the *director* to bring a civil action to enforce collection. The second paragraph provides that the *director* may add an amount not to exceed 10 per cent of the unpaid assessment to defray collection costs. No special provision is made for ordinary court costs. Therefore, such costs may be recovered by virtue of the general statute (Code Civ. Proc., § 1032). Section 1300.20, then, confers upon the *director* a complete cause of action for civil enforcement of an unpaid assessment, collection costs and court costs. Looking to the legislative history of section 1300.20, we find that when added in 1937, it contained only the first paragraph as it now appears with the addition of the words ''as provided in section 1300.19.'' In effect, if the director chose to bring an action in his own name under section 1300.20, he was bound to follow the procedure set out in section 1300.19 and presumably was entitled to seek all appropriate relief provided for by that section. The scope of section 1300.20 was amended in 1939 by the addition of the second paragraph, as it now reads, providing for the 10 per cent collection costs. In 1941 the first paragraph was amended by striking therefrom the words ''as provided in section 1300.19.'' The effect of the 1941 amendment was to cut the cord binding the personal debt cause of action conferred by section 1300.20 in favor of the director to the cause of action which section 1300.19 sets up in the People, thus creating two separate, complete types of civil enforcement actions—one in favor of the *People* and the other in favor of the *director*.

But, plaintiff urges, section 1300.19, subdivision (m) provides that penalties and remedies prescribed by that section ". . . shall be concurrent and alternative and neither singly nor combined shall the same be exclusive and either singly or combined the same shall be cumulative with any and all other civil, criminal or administrative rights, remedies, forfeitures or penalties provided or allowed by law with respect to any such violation."

We have no hesitancy in accepting the proposition that, in a proper case, civil, criminal and administrative procedures against a single defendant, founded on a single wrong, may be singly, concurrently or successively pursued. The difficulty arises in accepting the premise that the Legislature intended that two civil actions, one in the name of the People and one in the name of the director, may be maintained to collect the same unpaid assessment. Logic and justice compel the conclusion that the two civil remedies must be alternate. The director has a choice. He may proceed with collection suit in his own name as in debt and seek the collection costs as provided in section 1300.20, or he may complain to the Attorney General, who may bring suit in the name of the People and seek the civil penalty as provided in section 1300.19. If this be so, it cannot be said that the director may borrow from the People, nor may the People borrow from the director, the right to a penalty given to the other.

Since the action under consideration was filed in the name of the People, under section 1300.19, we have concluded that the trial court did not err in refusing to allow the collection costs provided for in section 1300.20.

We find plaintiff's contentions in respect to the findings devoid of merit. Plaintiff argues that the surplus findings on facts raised by the defendant's defenses and cross-actions shaped the court's determination in rendering its judgment and deprived plaintiff of the prohibitory injunction and collection costs for which it prayed. Those contentions have been fully answered elsewhere in this opinion.

It should be pointed out that our conclusion that the judgment must be affirmed has been reached without a consideration of whether the advertising complained of, although not strictly true, was in fact false and misleading within the meaning of various statutes found throughout our code system proscribing false and misleading advertising, and the decisional law interpreting and applying those statutes. We

accordingly expressly refrain from the decision of that question.

The judgments, which we have treated as one, are affirmed.

Stone, Acting P. J., concurred.

Conley, P. J., deeming himself disqualified, did not participate.

The petition of defendant and appellant for a hearing by the Supreme Court was denied July 18, 1962.