[Civ. No. 511. Fifth Dist. Jan. 31, 1966.]

G. B. PAGE et al., Plaintiffs and Appellants, v. BAKERS-
FIELD UNIFORM & TOWEL SUPPLY CO., et al.,
Defendants and Respondents.

Gill & Bowles and S. B. Gill for Plaintiffs and Appellants.

Goldberg, Noriega & Sullivan and David F. Goldberg for Defendants and Respondents.

CONLEY, P. J.—This case is the final result of a bitter-end laundry war in Kern County. The two groups of opponents, each of which was connected with a large organization engaging in similar work in Southern California, used means reminiscent of the law of the jungle to build up their own business standing and to ruin their competitors. During the struggle, each of the two appealed to the courts in an attempt to enlist the law on its own side. Each accused the other of improper practices under the provisions of the Unfair Practices Act (Bus. & Prof. Code, §§ 17000 to 17101), and asked for an injunction and damages.

After a lengthy trial, the court determined that both had been guilty of repeated breaches of the statutes relative to forbidden trade practices, and issued permanent injunctions requiring both to desist from further breaches of the law in the conduct of their businesses. The plaintiffs in one of the cases filed an appeal from portions of the judgment against them; the scope of the appeal will be more particularly defined in a later part of this opinion.

Plaintiffs are the individuals, G. B. Page and L. W. Page, and their organizations doing business under the names of Mission Linen Supply and the Kern Industrial Laundry; defendants, I. M. Richman and M. B. Richman, are the owners of Bakersfield Uniform & Towel Supply Co. Plaintiffs charged in their complaint filed April 3, 1962, that defendants were offering free rental and cleaning services to plaintiffs' cus-

tomers for the purpose of injuring plaintiffs and destroying competition in violation of the Business and Professions Code. A temporary restraining order and an order to show cause were issued. On May 4, 1962, plaintiffs filed an amended complaint for an injunction and damages. A first cause of action specified four business operations conducted by the defendants which were said to be unfair and stated that other illegal acts were also committed; they asked $5,000 for attorney's fees. In a second cause of action, plaintiffs alleged that defendants were tendering laundry and cleaning work at a figure below cost and were also offering services which did not exist; in a third cause of action, they alleged that defendants were soliciting violations of the Unfair Practices Act; they stated, in a fourth cause of action, that by reason of the wrongful conduct of the defendants, plaintiffs lost 75 customers, causing damage in the sum of $196,566; the prayer asked for a temporary restraining order, an order to show cause why defendants should not be enjoined during the pendency of the action, that defendants be permanently restrained from doing the acts complained of and that plaintiffs be paid treble damages in the sum of $196,566 besides costs of suit and attorney's fees in the amount of $5,000 or ''as they shall appear reasonable to the Court.''

The injunction suit filed by the Richmans was almost a duplicate complaint except that the positions of the parties plaintiff and defendant were interchanged.

The pretrial order asserted that the matters at issue were: whether there had been violations of the Unfair Practices Act by either or both parties; whether these alleged acts or omissions were done in good faith in meeting competition, and the nature, extent, and amount of actual damages, if any; whether either party had violated the applicable temporary restraining order; whether either party was entitled to a permanent injunction restraining the other from violations of the Unfair Practices Act, and if there was a right in either group to treble damages or attorney's fees. The nonjury trial lasted 24 days spread over a period of several months; the trial judge filed a memorandum decision stating that both litigants had repeatedly performed unlawful and unfair trade practices as against the other at substantially the same time, that each party had ''unclean hands,'' and that the court would grant a permanent injunction against each of them; that damages were suffered by both the litigants but that they were ''highly speculative and impossible to ascertain with

any degree of certainty,'' and that the damages sustained by each party were ''in equal magnitude and proportion.''

A single set of findings of fact and conclusions of law and a single judgment were filed in cases 83462 and 83493; the litigants in both were permanently enjoined from offering any linen rental or cleaning services to customers, or prospective customers, in Kern County, without cost or below cost, and from engaging in any deceptive or unfair trade practices.

In the findings, it was determined that the plaintiffs and defendants are competitors in the service trade of providing linen rental and industrial laundry services to commercial and industrial businesses in the County of Kern, and that, through their ''agents, servants, and employees'' each of them committed various and sundry violations of the California Unfair Practices Act, and more specifically violations of sections 17040, 17043, and 17045 of the Business and Professions Code; that all parties on both sides of the case ''. . . made offers of free rental and cleaning services, offered prices below cost, extended special privileges, unearned commissions and refunds to [the other parties'] customers and others, in violation of Sections 17040 and 17043 of the Business and Professions Code, for the purpose of injuring [the other parties] and other competitors and destroying competition, and none of the exceptions set forth and contained in the Business and Professions Code are applicable.'' It was thus apparent to the trial court that both plaintiffs and defendants were tarred with the same brush.

The trial judge further found that the improper acts of the parties ''. . . had an injurious effect on each other's businesses and were committed by each party with a purpose and intent of injuring a competitor and destroying competition'' and ''that it is true both parties committed such unlawful and unfair trade practices against each other, substantially at the same point and time'' and that they also ''. . . committed numerous acts of locality price discrimination,'' contrary to the provisions of the Unfair Practices Act. The court again made clear in finding No. XVII that the illegal acts of both parties were done ''. . . for the purpose and with the intent of injuring the other party and destroying competition, and such acts did result in an injurious effect on the business of each party.''

In the findings which followed it is pointed out that on April 3, 1962, with respect to the defendants, and on April 10, 1962, with respect to the plaintiffs, each was served with

a temporary restraining order enjoining them from ''. . . offering any of their linen rental and cleaning services to customers or prospective customers in the County of Kern, State of California, without cost or below cost'' or engaging in any deceptive or unfair trade practices and that said orders remained in effect until the date of trial, but that ''. . . plaintiffs and defendants continued to commit violations of the California Unfair Trade Practices Act, and each party, both plaintiff and defendant herein, violated the terms of the court's restraining order served on each party in all respects,'' and that notwithstanding said restraining orders ''. . . the defendants continued to make offers of free services and offers below cost,'' and that ''subsequent to the issuance of such restraining orders, and for sometime thereafter, the plaintiffs made offers of free services and offered a secret benefit to one customer and continued to practice locality price discrimination''; such violations ''. . . did have an injurious effect on each party's businesses and were committed by each party with the purpose and intent to injure a competitor and destroy competition.'' It is also stated in the findings that during the period of intense rivalry and competition ''. . . some fifty or sixty accounts of each party were induced to become customers of the other party as a result of direct solicitation.''

With respect to damages, the court further found as follows:

### ''XXV

''That it is true both sides suffered damages; that it is true the amount of actual damages suffered by both parties is highly speculative and impossible to ascertain with any degree of certainty; that it is true that such detriment in damages was suffered in approximately equal magnitude and proportion by both parties.

### ''XXVI

''That it is true the amount of reasonable attorneys' fees would be approximately the same for both parties.''

In the conclusions of law, the court held as follows:

### ''I

''That as a result of the actions of both parties as set out above, each party has unclean hands, and the court does hereby issue a permanent injunction against each party against committing any violations of the California Unfair Trade Practices Act, but by reason of the unclean hands of both parties in committing these various and sundry acts of violations of

the Unfair Trade Practices Act against each other and others, the court determines that both parties are [in] pari delicto and will help neither party by way of damages that they suffered or try to apportion said damages that they suffered, and will leave both parties where they lie.

"II

"That each party is entitled to a permanent injunction that enjoins and restrains the other party and its officers, agents, servants and employees, and all persons acting under such party directly or in its behalf, and all persons acting in concert or participating with such party, or any of them, from offering any of its linen rental and cleaning services to customers or prospective customers in the County of Kern, State of California, without cost or below cost, or from engaging in any deceptive or unfair trade practices or soliciting such acts and violations in said County and State.

"III

"That judgment be entered herein accordingly."

The judgment ordered a permanent injunction as to each party in accordance with the findings, but made no award of damages, attorneys' fees or costs to either party.

At this point, it is essential to determine just what portion of the judgment was appealed from. As above noted, two cases were tried together and the litigation resulted in a single set of findings and a single judgment. The caption of the consolidated causes bore the two numbers assigned respectively to the cases upon filing in the court below. The single notice of appeal filed by the Page group carried only the number of case 83462 and stated that the "plaintiffs hereby appeal . . . from the Judgment entered in this action against the plaintiffs in favor of the defendants, and from the whole thereof." It is, of course, proper for an appellant to appeal only from a severable portion of a judgment (*American Enterprises, Inc.* v. *Van Winkle,* 39 Cal.2d 210, 216 [246 P.2d 935] ; Cal. Rules of Court, rule 1; 3 Cal.Jur.2d, Appeal and Error, § 46, pp. 473-474), and we cannot escape the conclusion that the plaintiffs Page appealed only from that part of the judgment which was against the plaintiffs and in favor of the defendants in case number 83462. No appeal was taken as to any of the issues in case number 83493, in which the Pages were permanently enjoined from future violations of the Unfair Practices Act, or from that portion of the judgment in that case which denied an award of damages in favor

of Bakersfield Uniform and Towel Supply Co. and I. M. Richman and M. B. Richman. The appeal relates only to those portions of the judgment which denied damages or attorney's fees and costs to the Page plaintiffs. The main holding in case 83462 to the effect that the defendants should not violate the Unfair Practices Act in the future, of course, is not appealed; that part of the judgment conforms with the demands made by the Pages in that action.

Appellants present their appeal in the form of six questions as follows:

1) Can an operator in a service industry reduce its prices to a below-cost figure and offer free service to prevent further loss of business to a competitor, who is indiscriminately and deliberately offering free service and below-cost prices to such operator's customers, without losing its right to recover damages caused by competitor's prior and subsequent violations of the Unfair Practices Act?

2) Does the trial court's rejection of alleged uncontradicted evidence, a claimed failure to make findings on material issues, and the denial of a request for more specific findings constitute reversible error?

3) Is solicitation of a competitor's customers to secure business, considered alone, per se unlawful, and an unfair trade practice within the terms and provisions of the act?

4) Does failure of the trial court to make separate findings of fact and conclusions of law, in cases consolidated for trial, constitute error?

5) Where a party is entitled to an award of damages as a matter of law, does the trial court's alleged failure to make any attempt to compute actual damages constitute reversible error?

6) Should the appellate court reverse the trial court's judgment and make new findings of fact in favor of appellants and thus dispose of the appeal without further proceedings in the trial court?

The amended complaint filed by the Pages shows six specific requests for relief in case number 83462, besides the seventh, or "catch-all" provision of the prayer. The first three items were granted by the court; an order to show cause was made and a temporary restraining order issued on April 3, 1962; it remained in effect until made permanent by the judgment at the conclusion of the trial; the items of the prayer which were not granted by the court were subparagraphs

numbered 4, 5, and 6; they asked for treble damages, costs, and attorney's fees.

■ The answer to the first query posed by the appellants is made by the appropriate code sections themselves. The operator of a service industry cannot legally reduce its prices to a below-cost figure with intent to injure another or offer free service to prevent further loss of business to a competitor "who is indiscriminately and deliberately offering free service and below cost prices to such operator's customers." Each side must obey the law; the fact that one competing party disregards the statute does not give the other side a legal excuse to do so. ■ The Unfair Practices Act prohibits certain unfair, deceptive and discriminatory business acts for the purpose of preserving honest competition. (47 Cal.Jur.2d, Trademarks, etc., § 39 et seq., p. 766 et seq.) Intent to injure or destroy competitors is essential to liability.

■ The equitable doctrine of the refusal of aid to anyone with "unclean hands," does not, as such, apply to actions under the Act. (47 Cal.Jur.2d, Trademarks, etc., § 45, p. 774.) *Kofsky* v. *Smart & Final Iris Co.*, 131 Cal.App.2d 530, 532 [281 P.2d 5], points out that the doctrine of refusing aid to a litigant with "unclean hands" has no application where, as here ". . . the failure to restrain an act because the parties are *in pari delicto* would result in permitting an act declared by statute to be void or against public policy." (*People* v. *Gordon*, 105 Cal.App.2d 711, 721 [234 P.2d 287]; *Heflinger* v. *Heflinger*, 136 Va. 289 [118 S.E. 316, 318, 32 A.L.R. 1088].)

In *Tri-Q, Inc.* v. *Sta-Hi Corp.*, 63 Cal.2d 199, 218-219 [45 Cal.Rptr. 876, 404 P.2d 486], Mr. Justice Peters said: " '. . . the courts should not be so enamored with the Latin phrase *"in pari delicto"* that they blindly extend the rule to every case where illegality appears somewhere in the transaction.' "

In *Sandler* v. *Gordon*, 94 Cal.App.2d 254, 256-258 [210 P.2d 314], the appellate court upheld the trial court's finding that plaintiff sold certain items below his cost and below the lowest competitive price, but held that the purpose was not to injure competitors or to destroy competition. Appellant in that case attempted to point out that since the sales were made below cost the presumption arose under section 17071 of the Business and Professions Code, that they were made for the purpose of destroying competition and injuring competitors. The court held, however, that there was testimony which rebutted the presumption raised by section 17071, and that the evidence

was sufficient to establish that respondent's advertising and sales were made to meet the legal prices of a competitor as allowed by section 17050, subdivision (d).

In *People* v. *Gordon, supra,* 105 Cal.App.2d 711, 724, the court stated: "With respect to the question whether appellant came under the exception of section 17050(d) permitting sales below cost made 'In an endeavor made in good faith to meet the legal price of a competitor selling the same article or product etc.' it must be noted that appellant did not contend that he was meeting the *legal* prices of a competitor but that he was meeting the *actual* prices of competitors. This evidently intentional deviation from the statutory language indicates that appellant wholly disregarded the question of the legality of the low prices of his competitors and it negatives good faith in that respect."

■ In answer to the second question raised by appellants, it seems clear that the findings are supported by substantial evidence; in determining whether there is a sufficiency of the evidence to support a finding, an appellate court must accept as true all items of evidence, including inferences, which support the finding; a substantial conflict in the testimony must be resolved in favor of the findings. (*Bancroft-Whitney Co.* v. *McHugh,* 166 Cal. 140, 142 [134 P. 1157].) The findings of the trial court determined all the ultimate facts necessary to support the judgment. (*Wishart* v. *Claudio,* 207 Cal.App.2d 151, 153 [24 Cal.Rptr. 398].) ■ Appellants argue that *Calloway* v. *Downie,* 195 Cal.App.2d 348, 353 [15 Cal.Rptr. 747], holds that the 1959 amendment to section 634 of the Code of Civil Procedure was intended to compel trial judges to make findings on all material issues of fact. The respondents, however, properly urge that the court made sufficient specific findings on all essential issues, and that the setting out of each violation committed by appellants and respondents would serve no useful purpose and would result only in the inclusion of a mass of evidentiary detail. The trial court still is required to find only the ultimate facts; findings upon merely evidentiary facts are unnecessary. (*Wishart* v. *Claudio, supra,* 207 Cal.App.2d 151.) In *Vogelsang* v. *Wolpert,* 227 Cal.App.2d 102, 129 [38 Cal.Rptr. 440], the court held that the amendment of section 634 of the Code of Civil Procedure in 1959 did not change the essential procedure as to findings.

Appellants argue thirdly that solicitation of competitors' customers to secure business, irrespective of other factors, is not *per se* unlawful or an unfair trade practice within the

terms of the act; they say that the trial court did not clearly state that mere solicitation of a competitor's customers is an unfair trade practice but that it so indicated inferentially.

■ Solicitation of the accounts of a competitor, unaccompanied by factors denounced by law, and where no contractual relationships exist, is not an unfair trade practice *per se* and should be encouraged rather than discouraged for the purpose of maintaining competition in good faith and preventing the creation of monopolies.

■ Appellants state that the failure of the trial court to separate issues and make separate findings of fact and conclusions of law in cases consolidated for purposes of trial constitutes error; they rely on *Johnson* v. *Marr*, 8 Cal.App.2d 312, 313-314 [47 P.2d 489]. In the *Johnson* case, appellants urged that it was improper for the trial court to make separate findings, at least in the actions there involved which had been consolidated, citing *Stanton* v. *Superior Court*, 202 Cal. 478 [261 P. 1001]; however, the court held in the *Johnson* case that the *Stanton* opinion was not controlling authority, as the actions there were separate and distinct, and the causes of action severally stated in each were in no manner related, except that they were between the same parties with the same witnesses, saying: "A consolidation for purposes of trial does not merge the issues in separate cases when they are separate and thus change the requirement for several findings, conclusions and judgment in each case in the absence of a stipulation therefor."

Generally speaking, where cases are consolidated as here there should be only one set of findings. (*Israel* v. *Campbell*, 163 Cal.App.2d 806, 820 [330 P.2d 83]; *Wolfson* v. *Beatty*, 118 Cal.App.2d 392, 398 [257 P.2d 1017]; *Clinton* v. *Hogan*, 80 Cal.App.2d 815, 821-822 [13 P.2d 50]; *People* v. *Coit Ranch, Inc.*, 204 Cal.App.2d 52, 63 [21 Cal.Rptr. 875].) The lower court was correct in filing integrated findings covering both consolidated cases and one judgment; there cannot be any possible doubt as to the applicability of the various findings to each of the two consolidated cases.

The instant case involves an ordinary consolidation as authorized by section 1048 of the Code of Civil Procedure, and *McClure* v. *Donovan*, 33 Cal.2d 717, 721 [205 P.2d 17], cited by appellants, states the general rule that, "Ordinarily, consolidated actions may be determined by a single set of findings and a single judgment." Respondents also point out that in this case it is easy to determine which findings apply to appel-

lants and which to respondents. In the present case, parties, witnesses, evidence, and business practices were closely related. (*People* v. *Coit Ranch, Inc., supra,* 204 Cal.App.2d 52, 63.)

 With respect to damages, it is true that the principle of *pari delicto* is not directly applicable as already pointed out. However, an allied principle comes into play due to the nature of the testimony in regard to damages. There was no attempt by either side to show damages arising directly from any particular breach of the Unfair Practices Act by either side. On the contrary, the attempt was made by both groups to show damages by testimony comparing the net income or profit made during the "warfare" year with other periods in which the laundries were doing business. The use of the net annual income or profit factor involved acts on the part of each party which were direct violations of the statute concerning unfair trade practices. Each group of parties, therefore, claimed damages necessarily based upon a series of breaches of the law by them. Obviously, if a laundry sells its services below cost, it will lose money, and the total of these losses during the year of unbridled competition was, in substantial part, the data upon which the claim of damages was based. It is a wrongful and improper practice to seek damages dependent upon a violation of the law. In *Shelley* v. *Hart,* 112 Cal.App. 231, 242-243 [297 P. 82], it is said: "It will be observed the measure of damages upon which the plaintiff relies, was his loss of income based upon his inability to haul three loads of material each day which, together with the truck, weighed approximately 21,000 pounds, over the state highway at a rate of twenty-eight miles an hour. The plaintiff's profit therefore depended upon his violation of section 118 of the California Vehicle Act as it then existed. (Stats. 1927, p. 1439.) That section then provided:

" 'Speed limit for vehicles regulated according to weight and tire equipment.

" '(a) In addition to any other regulations imposed by this act it shall be unlawful for the driver of any vehicle, or combination of vehicles, the gross weight of which, including any load thereon is eighteen thousand pounds or more, to drive the same upon a public highway at a speed in excess of twenty miles per hour.'

"*This was clearly a measure of damages based upon a violation of the statute, and therefore incompetent.* Objections to this line of evidence should have been sustained. *In 17 C.J., page 797, section 119, it is said: 'Loss of profits may not be*

*considered as an element of damages, where the business from
which they would have resulted was, or would have been, con-
ducted in violation of law.'*

"It is impossible to determine what proportion of the ver-
dict for damages is based upon this illegal estimated rate of
speed. The evidence regarding this measure of damages was
clearly erroneous, and requires a reversal of the judgment."
(Italics added.)

Damages cannot be recovered if the evidence leaves
them uncertain, speculative, or remote. (25 C.J.S., Damages,
§ 42b, p. 738; 14 Cal.Jur.2d, Damages, § 55, pp. 682-683.)
As is said in *Continental Car-Na-Var Corp.* v. *Moseley,* 24
Cal.2d 104, 113 [148 P.2d 9] : "Evidence to establish profits
must not be uncertain or speculative. This rule does not apply
to uncertainty as to the amount of the profits which would
have been derived, but to uncertainty or speculation as to
whether the loss of profits was the result of the wrong and
whether any such profits would have been derived at all.
[Citing authority.]"

*Allen* v. *Gardner,* 126 Cal.App.2d 335, 340 [272 P.2d 89],
holds: "Uncertainty as to the fact of damage, that is, as to
the nature, existence or cause of the damage, is fatal. But
the same certainty as to the amount of the damage is not
required." (See also *Reid* v. *Mass Co., Inc.,* 155 Cal.App.2d
293, 307 [318 P.2d 54]; *Guerbadot* v. *Sneckner,* 185 Cal.
App.2d 173, 175-176 [8 Cal.Rptr. 141].)

The court found that it is true that the amount of
actual damages suffered by both groups of parties is highly
speculative and impossible to ascertain with any degree of
certainty. The record amply supports this finding, particularly
in view of the fact that part of the alleged damage through
loss of annual profits was unquestionably due to the breach of
the law by the plaintiffs Page, and the exact amount of loss
arising from this factor cannot be ascertained.

Perhaps the plaintiffs can take consolation from the
fact that the findings of the court, based on the evidence, show
generally that damages in relatively equal amounts were suf-
fered by the respective parties.

This latter observation neatly and realistically disposes of
the contention of the appellants that they should have been
awarded attorney's fees as a necessary result of the issuance
of the injunction in the case filed by them. (Bus. & Prof. Code,
§ 17082.) The court has in effect found that the extensive
services furnished by the lawyers for each side were of approxi-

mately equal value and this finding, in common sense, extends also to the costs. In effect, therefore, there was a setoff relative to attorney's fees and costs as between the contending parties in these consolidated cases, and while technically there should have been an award of attorney's fees and costs in the respective cases to each of the parties by reason of the fact that each side prevailed with regard to the issuance of a permanent injunction, the conclusion that the failure to observe this requirement should not result in a reversal is too clear for extended comment. (Cal Const., art. VI, § 4½.)

Appellants' sixth argument can be disposed of quickly; they ask this court to enter new findings and conclusions of law pursuant to section 956a of the Code of Civil Procedure in which plaintiffs shall be awarded damages of $134,761.05 and $100,000 attorney's fees. The immediate reaction is "they cannot be serious."

The instant case is not one in which section 956a should, or could, be followed.

It seems to us that the principal issues which require a decision as between the parties are properly covered in the findings made by the court. We also determine that there is ample evidence to justify the findings, and that the judgment is in accordance with the findings as made. There is no justification for this court to make different or additional findings.

The judgment is affirmed.

Brown (R. M.), J., and Stone, J., concurred.

A petition for a rehearing was denied February 28, 1966, and appellants' petition for a hearing by the Supreme Court was denied March 30, 1966.